# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-DR-01516-SCT

*DEVIN A. BENNETT*

**v.**

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/2003 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MISSISSIPPI OFFICE OF CAPITAL POST-CONVICTION RELIEF |
| | BY: GLENN S. SWARTZFAGER |
| | LOUWLYNN V. WILLIAMS |
| | THOMAS C. LEVIDIOTIS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT McNAMARA |
| | MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | DAVID CLARK |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | PETITION FOR LEAVE TO SEEK POST-CONVICTION RELIEF IS GRANTED IN PART AND DENIED IN PART - 08/28/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     The matter before us is Devin A. Bennett's petition for post-conviction relief from a capital-murder conviction and death sentence. We grant him leave to file his petition in the trial court solely on the issue of ineffective assistance of counsel during the penalty phase of the trial. We deny the petition in all other respects.

**STATEMENT OF THE FACTS**

¶2. Yolanda Lewis took her two-month-old infant son to River Oaks Hospital in Flowood, Mississippi. Emergency personnel observed that the child was pale, cold, and not breathing. A team of nurses and doctors revived the child's heartbeat and transferred him to the pediatric unit at University Medical Center ("UMC") in Jackson. Upon arrival, the child was in a coma and on life support. Dr. Bonnie Woodall noted bruising to the child's head as well as retinal hemorrhaging. X-rays revealed a subdural hematoma and a fractured skull. The child never awoke from the coma, and was pronounced dead on August 27, 2000.

¶3. Devin Bennett, the child's father, gave multiple inconsistent statements when asked what had happened to his son. At River Oaks, he told social workers that the child had been placed in a car seat but had fallen out. While at UMC, Bennett first told police that he had accidentally kicked his son's car seat from the bed to the floor. He eventually admitted that he "shook him too hard."

¶4. Bennett was indicted for his child's capital murder and the underlying crime of felonious child abuse and was convicted. After the sentencing phase of the trial, the jury imposed the death penalty. This Court affirmed both the conviction and the sentence in *Bennett v. State*, 933 So. 2d 930 (Miss. 2006).

¶5. Bennett now seeks post-conviction relief on the following bases: (1) ineffective assistance of counsel, (2) the trial judge's failure to accept his guilty plea, (3) the trial judge's failure to limit the scope of cross-examination, (4) that the death penalty by lethal injection violates the First and Eighth Amendments to the U.S. Constitution, (5) that the death penalty

is unconstitutional, (6) cumulative error, and (7) that his death sentence is disproportionate to the crime charged.

ANALYSIS

¶6. The standard for this Court's review of convictions for capital murder and sentences of death is "heightened scrutiny." *Lynch v. State*, 951 So. 2d 549, 555 (Miss. 2007). Under this standard of review, all doubts are to be resolved in favor of the accused because "what may be harmless error in a case with less at stake becomes reversible error when the penalty is death." *Id.* (quoting *Irving v. State*, 361 So. 2d 1360, 1363 (Miss. 1978)). *See also Fisher v. State*, 481 So. 2d 203, 211 (Miss. 1985).

I.

¶7. Bennett claims his counsel was ineffective during the penalty phase of the trial. A claim of ineffective assistance of counsel requires an analysis of "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The heart of the issue is whether counsel's performance was so deficient as to prejudice the defense of the case. *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984) (citing *Strickland*, 466 U.S. at 687). The analysis of the inquiry is on whether counsel's assistance was so deficient that it undermined the proper functioning of the adversary process considering all the circumstances. *Id.*

¶8.     We must consider this argument and review additional evidence outside the direct-appeal record which could not have been reviewed or considered on direct appeal. Thus, this issue is not procedurally barred. *See* Miss. R. App. P. 22(b) (PCR issues may be raised on direct appeal "if such issues are based on facts fully apparent from the [direct-appeal] record.").

*Ineffective representation*

¶9.     In considering Bennett's first issue, we must strongly presume that counsel's conduct falls within a wide range of reasonable professional assistance, and the challenged act or omission "might be considered sound trial strategy." ***Strickland***, 466 U.S. at 689. In other words, defense counsel is presumed competent. ***Id***. at 690.

¶10.    In the case *sub judice*, we must analyze the representation provided by Bennett's attorneys during the penalty phase of the trial. An attorney representing a defendant in a death-penalty case has a duty to focus on both the guilt and penalty phases of the trial. ***Moore v. Johnson***, 194 F. 3d 586, 612 (5th Cir. 1999) (emphasis added) ("Mitigation evidence concerning a particular defendant's character or background plays a ***constitutionally important*** role in producing an individualized sentencing determination that the death penalty is appropriate in a given case.").

¶11.    One of Bennett's counsel executed an affidavit used by Bennett's present counsel in support of his motion. The affidavit states, in part:

> During my investigation, Devin Bennett admitted to me that he had abused chemical substances in the past, but I am now informed that his substance abuse problem was much worse than my investigation revealed . . . .

4

I thought that Devin was competent to stand trial and there was not a sanity defense available; therefore, I did not hire or request funding or mental health experts to evaluate Devin prior to trial.

I did not hire or request funding for a mitigation investigator. I did not have a psycho-social history prepared. Devin denied any significant mental problems, though he did reveal to me that he had a troubled childhood because of drug abuse by his parents . . . .

I was unaware that Devin had been diagnosed with a mood disorder at age 12, and if I had been aware of such, I would have requested that he be psychologically evaluated, and evaluated for chemical dependency. If an evaluation had been done and showed that Devin suffered from a major psychiatric illness, I would have presented it in the penalty phase.

¶12. Other affidavits filed with Bennett's motion revealed that several witnesses would have attested to Bennett's traumatic childhood, mood disorders, and substance-abuse history. Mark Webb, a licensed psychiatrist, would have testified concerning Bennett's long history of psychiatric and drug-related treatment, as well as mental disorders due to his traumatic childhood. John Webb, an addiction specialist, would have testified about Bennett's substance-abuse history and its behavioral impact on Bennett. Bennett's mother, Debbie Bennett, and several of his peers would have testified about Bennett's troubled childhood, as well as his relationship with his son, which they claim was loving and normal. The trial court must determine at the hearing that such testimony would have been relevant to a jury's consideration of whether to impose a sentence of life in prison or death.

¶13. Bennett's mother states by affidavit that – although she traveled to Mississippi prior to the trial to meet Bennett's attorney – he asked her no questions during their meeting and failed to call her to testify during the sentencing phase of the trial. Bennett's attorney, on the

5

other hand, claims she "was not available to interview." This is one of the factual disputes that must be resolved by the trial court.

¶14. We hold that, as to the penalty phase of his trial, Bennett has satisfied the "substantial showing" threshold, and he is entitled to a hearing on the issue. Miss. Code Ann. § 99-39-27(5) (Rev. 2007).

*Prejudice*

¶15. In analyzing the second prong of the test, for prejudice to the defendant, a reviewing court must determine whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991); *Strickland*, 466 U.S. 668, 694 (1984).

¶16. The record in this case discloses no evidence of premeditation. Nor is there evidence that Bennett abused his son in any way prior to the incident which led to his death. This, combined with the evidence presented of Bennett's history of a traumatic childhood, mental disorders, and substance abuse, presents a substantial showing that Bennett is entitled to a hearing on the issue of ineffective assistance of counsel that may have occurred during the penalty phase of his trial. Therefore, we grant Bennett leave to file his petition in the trial court, as provided by Section 99-39-27.

**II.**

¶17. Bennett also claims the trial court erred in refusing to accept his guilty plea. Prior to trial, Bennett attempted to enter a guilty plea to the lesser-included offense of manslaughter committed in the heat of passion. During the plea colloquy, however, Bennett balked at agreeing to the facts as presented, and the trial judge ended the proceeding.

6

¶18. Bennett previously raised this issue on direct appeal. This Court considered and rejected his argument. *Bennett*, 933 So. 2d at 940-41. Thus, the matter is now procedurally barred from collateral review under the doctrine of res judicata. *Spicer v. State*, 973 So. 2d 184, 196-97 (Miss. 2007).

### III.

¶19. Bennett next raises as error the trial court's failure to limit the scope of cross-examination. The issue was capable of disposition on direct appeal and is now procedurally barred from further consideration on collateral appeal. *Branch v. State*, 961 So. 2d 659, 667 (Miss. 2007) (procedural bar on direct-appeal issue).

### IV.

¶20. Bennett next argues that death by lethal injection violates his First- and Eighth-Amendment rights under the U.S. Constitution. Although Bennett failed to raise this issue on direct appeal, we do not hold that it is procedurally barred from further review on collateral appeal. *Jordan v. State*, 918 So. 2d 636, 661-62 (Miss. 2005).

¶21. On April 16, 2008, the United States Supreme Court decided *Baze v. Rees*, upholding the State of Kentucky's lethal-injection protocol as not being violative of the Eighth Amendment. *Baze v. Rees*, 553 U.S. __,128 S. Ct. 1520, 170 L. Ed. 2d 420 (2008). In so doing, Chief Justice Roberts's plurality opinion announced the standard which we must use to determine whether our method of execution violates the Eighth Amendment. *Id*. The Supreme Court's plurality found that cruel and unusual punishment occurs where lethal injection as an execution method presents a "substantial" or "objectively intolerable risk of serious harm" in light of "feasible, readily implemented" alternative procedures. *Id*. at 1531,

7

1532. However, the analysis was focused on the **manner** of lethal injection, and did not question the validity of lethal injection or the constitutionality of the death penalty as such. *Id.* at 1537. The ***Baze*** Court held:

> Kentucky has adopted a method of execution believed to be the most humane available, one it shares with 35 other States . . . [which] if administered as intended . . . will result in a painless death. The risks of maladministration . . . such as improper mixing of chemicals and improper setting of IVs by trained and experienced personnel – cannot be remotely characterized as "objectively intolerable." Kentucky's decision to adhere to its protocol despite these asserted risks, while adopting safeguards to protect against them, cannot be viewed as probative of the wanton infliction of pain under the Eighth Amendment.

***Baze***, 128 S. Ct. at 1537.

¶22. For "the disposition of other cases uncertain," Justice Roberts clearly stated that "[a] State with a lethal injection protocol **substantially similar** to the protocol we uphold today would not create a risk that meets [the 'substantial risk'] standard." ***Id.*** at 1537 (emphasis added).[1]

¶23. If differences exist between Mississippi's execution protocols and those used in Kentucky, then, the inquiry is whether Mississippi's lethal-injection protocol meets Constitutional muster in light of this recent Supreme Court decision. The Fifth Circuit, when considering inmate Dale Leo Bishop's Eighth-Amendment challenge to Mississippi's lethal-injection procedures, recently announced that "Mississippi's lethal injection protocol appears to be substantially similar to Kentucky's protocol that was examined in ***Baze***." ***Walker v.***

---

[1]Such comparative analysis is followed by other jurisdictions as well. *See **Emmett v. Johnson***, 2008 U.S. App. LEXIS 14701, at *22-23 (4th Cir. Va. July 10, 2008) (comparing Virginia's protocol to Kentucky's to prove it does not violate the Eighth Amendment); ***Jackson v. Houk***, 2008 U.S. Dist. LEXIS 36061, at *215-217 (N.D. Ohio May 1, 2008) (declaring Ohio's method of execution, same as followed by Kentucky, to be constitutional).

8

***Epps***, 2008 U.S. App. LEXIS 15547 at *3 (5th Cir. Miss. July 21, 2008). We agree with the Fifth Circuit's analysis, and hold that Bennett's Eighth Amendment challenge to the lethal injection protocol in Mississippi is without merit.

¶24. In addition, Bennett offers the novel argument that the use of a paralyzing drug constitutes a prior restraint on free speech in violation of the First Amendment. This argument is unsupported by any controlling authority and amounts to nothing more than subjective speculation. ***Spicer***, 973 So. 2d at 207-08.

### V.

¶25. Next, Bennett argues that the death penalty is unconstitutional because some studies show that jurors are incapable of administering it fairly. A challenge to the constitutionality of a jury's sense of sentencing responsibility must be raised on direct appeal, absent a showing of sufficient legal cause to excuse the failure to do so. ***Johnson v. State****,* 508 So. 2d 1126, 1128 (Miss. 1987). This issue is, therefore, without merit.

### VI.

¶26. Bennett next argues cumulative error. Under our "heightened scrutiny" standard of review, all doubts are to be resolved in favor of the accused because "what may be harmless error in a case with less at stake becomes reversible error when the penalty is death." ***Lynch v. State***, 951 So. 2d 549, 555 (Miss. 2007) (citing ***Balfour v. State***, 598 So. 2d 731, 739 (Miss. 1992)). In ***Byrom v. State***, this Court held:

> [U]pon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we shall have the discretion to determine, on a case-by-case basis, as to whether such error or errors, although not reversible when standing alone, may when considered

9

cumulatively require reversal because of the resulting cumulative prejudicial effect.

***Byrom v. State***, 863 So. 2d at 846-47.

¶27.   Although Bennett has made a substantial showing that he is entitled to a hearing on his claim of ineffective assistance of counsel at the sentencing hearing, we find no other error in this case which could combine to constitute cumulative error.  Thus, we need not address this issue.

## VII.

¶28.   Finally, Bennett argues that his death sentence is disproportionate to the crime charged "when considering petitioner's relative mental state and culpability."  This issue was considered by the Court on direct appeal and found to be without merit. ***Bennett***, 933 So. 2d at 951.  The matter is now procedurally barred from further review.  ***Grayson v. State***, 879 So. 2d 1008, 1019 (Miss. 2004).

## CONCLUSION

¶29.   Bennett has sufficiently demonstrated that he is entitled to seek post-conviction relief in the trial court on his claim of ineffective assistance of counsel during the penalty phase of his trial.  We find no merit in Bennett's other arguments.  We therefore grant Bennett leave to file a post-conviction-relief petition in the trial court solely on the issue of ineffective assistance of counsel during the penalty phase of his trial.  We deny his petition in all other respects.

¶30.   **PETITION FOR LEAVE TO SEEK POST-CONVICTION RELIEF IS GRANTED IN PART AND DENIED IN PART.**

**WALLER AND DIAZ, P.JJ., CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. SMITH, C.J., NOT PARTICIPATING.**