# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-DR-01363-SCT

*MACK ARTHUR KING*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/28/2003 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MISSISSIPPI OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: GLENN SWARTZFAGER |
| | LOUWLYNN VANZETTA WILLIAMS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JASON L. DAVIS |
| | MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - POST CONVICTION RELIEF |
| DISPOSITION: | DENIED - 09/24/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Mack Arthur King was convicted of capital murder of Lela Patterson in 1980 and was sentenced to death. On October 27, 1982, this Court affirmed both the conviction and the sentence. ***King v. State***, 421 So. 2d 1009 (Miss. 1982). This Court denied without prejudice King's subsequent application for leave to file a petition for writ of error coram nobis on

December 14, 1983, for failure to comply with Court rules. King then filed a second application for leave to petition the circuit court for writ of error coram nobis, and this Court ordered the trial court to conduct an evidentiary hearing regarding King's claim of ineffective assistance of counsel. *See King v. Thigpen*, 441 So. 2d 1365 (Miss. 1983); *King v. Thigpen*, 446 So. 2d 600 (Miss. 1984). The trial court conducted a hearing and found that counsel had rendered effective assistance. This Court affirmed the trial court's denial of relief. *King v. State*, 503 So. 2d 271 (Miss. 1987). King's petition for writ of habeas corpus was then denied by the United States District Court for the Northern District of Mississippi. However, on August 25, 1993, the Fifth Circuit Court of Appeals vacated the sentence of death and remanded the case with instructions to return it to the state court for reconsideration of the sentence of death. *King v. Puckett*, 1 F.3d 280 (5th Cir. 1993). This Court vacated the sentence of death and remanded for a new sentencing trial. *King v. State*, 656 So. 2d 1168 (Miss. 1995). On April 9, 1998, King was again sentenced to death. King appealed, and this Court reversed the death sentence and remanded for a new sentencing hearing on the ground that the trial court had erred in instructing the jury to disregard sympathy in its deliberations. *King v. State*, 784 So. 2d 884 (Miss. 2001). King was again sentenced to death in 2003 and subsequently appealed. This Court affirmed the conviction of capital murder and sentence of death on May 31, 2007. *King v. State*, 960 So. 2d 413 (Miss. 2007).

¶2. Thereafter, King filed this application for leave to seek post-conviction relief in the trial court pursuant to Mississippi Code Section 99-39-5. He filed a supplemental petition on September 19, 2008. King asserts the following: 1) Mississippi's lethal injection procedure creates a substantial risk of serious harm in violation of the Eighth Amendment;

2

2) he was denied due process when the trial court denied funds for a mental health expert and this Court affirmed the denial, thus denying him the opportunity to fully develop evidence of mental retardation; 3) the trial court erred in failing to allow presentation of mitigation evidence; 4) he was denied his Sixth Amendment right to the effective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and the corresponding portions of the Mississippi Constitution; 5) he is mentally retarded as defined by the Court in *Chase v. State*, 873 So. 2d 1013 (Miss. 2004), and is ineligible for the death penalty; 6) he was denied his rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Mississippi law due to the cumulative effect of the errors at trial; and 7) the sentence is disproportionate and in violation of the Eighth and Fourteenth Amendments to the United States Constitution and corresponding portions of the Mississippi Constitution.

## ANALYSIS

¶3.     Post-conviction relief is limited in nature and is the means "to review those objections, defenses, claims, questions, issues or errors which in practical reality could not be or should not have been raised at trial or on direct appeal." Miss. Code Ann. § 99-39-3 (Rev. 2007).

¶4.     Mississippi Code Section 99-39-21 also provides, in relevant part:

> (1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.
> (2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual

3

issue; and any relief sought under this article upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.

(3) The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.

Miss. Code Ann. § 99-39-21(1)(2)(3) (Rev. 2007). Moreover, Mississippi Code Section 99-39-27 provides that "[t]he dismissal or denial of an application under this section is a final judgment and shall be a bar to a second or successive application under this article." Miss. Code Ann. § 99-39-27(9) (Rev. 2007). The exceptions to this procedural bar include: supervening mental illness; an intervening decision that would adversely affect the outcome of the conviction; newly discovered evidence that was not discoverable at the time of trial and that would have caused a different result; expired sentence; and unlawful revocation of probation, parole, or conditional release. Miss. Code Ann. § 99-39-27(9) (Rev. 2007).

¶5.     In *Foster v. State*, this Court said:

> Procedural bars of waiver, different theories, and res judicata and exception thereto as defined in post-conviction relief statute are applicable in death penalty post-conviction relief application. [Citations omitted]. We have repeatedly held that a defendant is procedurally barred by waiver from making a challenge to a capital sentencing scheme as a whole in a petition for post-conviction relief where the issue was capable of determination at trial and/or on direct appeal but was not raised, and defendant failed to show cause or actual prejudice for not raising the issue on direct appeal. [Citations omitted]. Post-conviction relief is not granted upon facts and issues which could or should have been litigated at trial and on appeal. "The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal." Miss. Code Ann. § 99-39-21(3) (Supp. 1994). We must caution that other issues which were either presented through direct appeal or could have been presented on direct appeal or at trial are procedurally barred and cannot be relitigated under the guise of poor representation by counsel.

*Foster*, 687 So. 2d 1124, 1129 (Miss. 1996).

4

**I. Mississippi's lethal injection procedure creates a substantial risk of serious harm in violation of the Eighth Amendment.**

¶6.     King failed to raise this issue at trial or on direct appeal.  Therefore, this claim is procedurally barred by Mississippi Code Section 99-39-21(1) as set out above.  However, notwithstanding the procedural bar, this claim is without merit pursuant to **Bennett v. State**, 990 So. 2d 155, 161 (Miss. 2008) (holding that Mississippi's lethal injection protocol does not violate the Eighth Amendment) (citing **Baze v. Rees**, 553 U.S. __, 128 S. Ct. 1520, 170 L. Ed. 2d 420 (2008)).

**II. King was denied due process when the trial court denied funds for a mental health expert and this Court affirmed the denial, thus denying him the opportunity to fully develop evidence of mental retardation.**

¶7.     King asserts that he was denied due process when the trial court denied counsel's request for funds for a mental health expert.  This Court previously considered this issue and affirmed the trial court's denial of funding in **King v. State**, 960 So. 2d 413 (Miss. 2007).  On direct appeal, this Court offered a detailed analysis of this assignment of error pursuant to **Ake v. Oklahoma**, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), and found that King did not show the "substantial need" required to obtain funds for an additional independent expert and did not find that he was prejudiced by the denial of funds.  **King**, 960 So. 2d at 420-24.  Therefore, King is procedurally barred from reasserting this issue under the doctrine of res judicata.  *See* Miss. Code Ann. § 99-39-21(3) (Rev. 2007).

¶8.     Moreover, King has failed to demonstrate that his claims are not procedurally barred as required by Mississippi Code Section 99-39-21(6).[1]  King asserts that **Rivera v.**

---

[1]"The burden is upon the prisoner to allege in his motion such facts as are necessary to demonstrate that his claims are not procedurally barred under this section."  Miss. Code Ann. §

5

*Quarterman*, 505 F. 3d 349 (5th Cir. 2007) and *Panetti v. Quarterman*, 551 U.S. 930, 127

S. Ct. 2842, 168 L. Ed. 2d 662 (2007) constitute intervening decisions and are sufficient to

overcome the procedural bar. However, we disagree. Both *Rivera* and *Panetti* uphold the

requirement that a defendant must make a substantial threshold showing of mental

retardation.[2] These holdings are consistent with *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct.

1087, 84 L. Ed. 2d 53 (1985), and do not constitute intervening caselaw for the purpose of

overcoming a procedural bar. As set out above, this Court previously has determined that

King has failed to show substantial need. Therefore, King is procedurally barred from

reasserting this issue. *See* Miss. Code Ann. § 99-39-21(3) (Rev. 2007).

**III. The trial court erred in failing to allow presentation of mitigation evidence.**

¶9.      King asserts that the trial court erred in not allowing him to challenge or rebut the

State's case against him by presenting evidence of his innocence during resentencing. King

raised this residual-doubt issue on direct appeal, and this Court, citing *Oregon v. Guzek*, 546

U.S. 517, 126 S. Ct. 1226, 163, L. Ed. 2d 1112 (2006), found that King is barred by the

doctrine of res judicata from making an argument as to his guilt at a resentencing trial. *King

v. State*, 960 So. 2d 413, 436-39 (Miss. 2007). Therefore, this issue is procedurally barred

pursuant to Mississippi Code Section 99-39-21(3) as set out herein. Further, King fails to

offer any evidence sufficient to overcome the procedural bar as required by Mississippi Code

Section 99-39-21(6).

---

99-39-21(6) (Rev. 2007).

[2]*Rivera*, 505 F. 3d at 358 (citing *Ford v. Wainwright*, 477 U.S. 399, 106 S. Ct. 2595, 91 L. Ed. 2d 335 (1986)). *Panetti*, 127 S. Ct. at 3848 (also citing *Ford*).

**IV. King was denied his Sixth Amendment right to the effective assistance of counsel pursuant to *Strickland v. Washington* and the corresponding portions of the Mississippi Constitution.**

¶10.    The United States Supreme Court established a two-part test for determining a claim of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

¶11.    Specifically, King asserts that counsel was ineffective for failure to: 1) challenge the sufficiency of the indictment; 2) preserve the issue of residual doubt for appeal; 3) challenge Mississippi's lethal injection protocol; 4) raise *Panetti v. Quarterman* on rehearing; and 5) properly litigate King's mental retardation claim.

*1) Sufficiency of the indictment*

¶12.    King asserts that counsel was ineffective for failing to challenge the sufficiency of the indictment. Specifically, King asserts that the 1980 indictment failed to properly articulate the underlying offense of burglary and cites *Berryhill v. State*, 703 So. 2d 250 (Miss. 1997), as authority. However, this Court previously has considered and rejected this argument, finding that it was procedurally barred as untimely. *King*, 960 So. 2d at 431. Accordingly, King is procedurally barred from reasserting this issue. *See* Miss. Code Ann. § 99-39-21(3)

(Rev. 2007). Further, King fails to offer any evidence sufficient to overcome the procedural bar as required by Mississippi Code Section 99-39-21(6).

### 2) *Residual doubt*

¶13. King asserts that counsel was ineffective for failing to preserve the issue of residual doubt for appeal. Specifically, King claims he was denied his constitutional right to present mitigation evidence of his innocence during his resentencing. As discussed previously herein in Issue III, King raised the issue of residual doubt on appeal, and this Court found that it was procedurally barred. Moreover, this issue "cannot be relitigated under the guise of poor representation by counsel." *Foster*, 687 So. 2d at 1129.

### 3) *Mississippi's lethal injection protocol*

¶14. King asserts that counsel was ineffective for failing to challenge the constitutionality of Mississippi's lethal injection protocol as violating the Eight Amendment's prohibition against cruel and unusual punishment. However, as discussed previously herein in Issue I, this Court has held that Mississippi's lethal injection protocol does not violate the Eighth Amendment. *See Bennett*, 990 So. 2d 155. Therefore, there would be no basis for finding counsel ineffective. Further, this issue "cannot be relitigated under the guise of poor representation by counsel." *Foster*, 687 So. 2d at 1129.

### 4) *Panetti v. Quarterman*

¶15. King asserts that counsel was ineffective for failing to raise *Panetti v. Quarterman* on rehearing as authority for King's claims regarding funding for a mental health expert and on mental retardation. *Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007). However, as discussed previously herein in Issue II, King is procedurally barred

from reasserting these issues, and *Panetti* does not constitute an intervening decision. Further, King cannot relitigate this issue under the guise of ineffective assistance of counsel. *Foster*, 687 So. 2d at 1129.

*5) Mental retardation claim*

¶16.    King argues that to "the extent the Court might find any of the issues regarding [King's] mental retardation barred, he respectfully submits that his prior counsel was ineffective in failing to properly litigate the mental retardation issue at trial and on appeal" pursuant to *Strickland*.  As discussed herein, King raised the mental retardation issue on appeal, and this Court found it to be without merit.  Therefore, King is procedurally barred from reasserting this issue by the doctrine of res judicata.  Further, King cannot relitigate this issue under the guise of ineffective assistance of counsel.  *Foster*, 687 So. 2d at 1129.

**V. King is mentally retarded as defined by this Court in *Chase v. State* and is ineligible for the death penalty.**

¶17.    King asserts that he is mentally retarded pursuant to *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002), and, therefore, is ineligible for the death penalty.

¶18.    In *Chase v. State*, 873 So. 2d 1013 (Miss. 2004), this Court clarified the application of *Atkins* in the trial courts as follows:

> The *Atkins* majority cited, with approval, two specific, almost identical, definitions of "mental retardation." The first was provided by the American Association on Mental Retardation (AAMR):
>
>> *Mental retardation* refers to substantial limitations in present functioning. It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, community use,

9

self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18.

*Atkins*, 536 U.S. at 308 n.3, citing Mental Retardation: Definition, Classification, and Systems of Support 5 (9th ed.1992). The second was provided by The American Psychiatric Association:

The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C). Mental Retardation has many different etiologies and may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system." Diagnostic and Statistical Manual of Mental Disorders 39 (4th ed. 2000).

*Id*.

The Diagnostic and Statistical Manual of Mental Disorders, from which the American Psychiatric Association definition is quoted, further states that "mild" mental retardation is typically used to describe persons with an IQ level of 50-55 to approximately 70. *Id*. at 42-43. The Manual further provides, however, that mental retardation may, under certain conditions, be present in an individual with an IQ of up to 75. [n.18] *Id*. at 40. Additionally, according to the *Atkins* majority, "it is estimated that between 1 and 3 percent of the population has an IQ between 70 and 75 or lower, *which is typically considered the cutoff IQ score* for the intellectual function prong of the mental retardation definition." *Id*. citing 2 Kaplan & Sadock's Comprehensive Textbook of Psychiatry 2952 (B. Sadock & V. Sadock eds 7th ed. 2000) (emphasis added).

n.18    This point is conceded by the State. However, IQ, alone, does not determine mental retardation. According to the DSM-IV, "it is possible to diagnose Mental Retardation in individuals with IQ's between 70 and 75 who exhibit significant deficits in adaptive behavior. Conversely, Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning.

10

These definitions were previously adopted and approved by this Court in *Foster v. State*, 848 So. 2d 172 (Miss. 2003). This Court further held in *Foster* that the Minnesota Multiphasic Personality Inventory-II (MMPI-II) is to be administered since its associated validity scales make the test best suited to detect malingering. . . . Foster must prove that he meets the applicable standard by a preponderance of the evidence. . . . This issue will be considered and decided by the circuit court without a jury.

*Id*. at 175.

These definitions, approved in *Atkins*, and adopted in *Foster*, together with the MMPI-II, [n.19] provide a clear standard to be used in this State by our trial courts in determining whether, for Eighth Amendment purposes, a criminal defendant is mentally retarded. The trial judge will make such determination, by a preponderance of the evidence, after receiving evidence presented by the defendant and the State.

> n.19   Although this Court has identified the MMPI-II as a test that should be given, we now clarify our position by stating that the expert should use the MMPI-II, and/or any other tests and procedures permitted under the Mississippi Rules of Evidence, and deemed necessary to assist the expert and the trial court in forming an opinion as to whether the defendant is malingering.

*Procedure to be used*.

Having established the definition of mental retardation to be used for purposes of Eighth Amendment protection to mentally retarded defendants, we now turn to the procedure to be used in reaching a determination of mental retardation.

We hold that no defendant may be adjudged mentally retarded for purposes of the Eighth Amendment, unless such defendant produces, at a minimum, an expert who expresses an opinion, to a reasonable degree of certainty, that:

> 1. The defendant is mentally retarded, as that term is defined by the American Association on Mental Retardation and/or The American Psychiatric Association;

> 2. The defendant has completed the Minnesota Multi phasic Personality Inventory-II (MMPI-II) and/or other similar tests, and the defendant is not malingering.

11

Such expert must be a licensed psychologist or psychiatrist, qualified as an expert in the field of assessing mental retardation, and further qualified as an expert in the administration and interpretation of tests, and in the evaluation of persons, for purposes of determining mental retardation.

Upon meeting this initial requirement to go forward, the defendant may present such other opinions and evidence as the trial court may allow pursuant to the Mississippi Rules of Evidence.

Thereafter, the State may offer evidence, and the matter should proceed as other evidentiary hearings on motions.

At the conclusion of the hearing, the trial court must determine whether the defendant has established, by a preponderance of the evidence, that the defendant is mentally retarded. The factors to be considered by the trial court are the expert opinions offered by the parties, and other evidence if limitations, or lack thereof, in the adaptive skill areas listed in the definitions of mental retardation approved in *Atkins*, and discussed above. Upon making such determination, the trial court shall place in the record its finding and the factual basis therefor.

*Chase v. State*, 873 So. 2d at 1027-29.

¶19. The trial court denied King's motion to determine mental retardation. On appeal, King asserted that the trial court erred by not granting him a hearing pursuant to *Chase*. This Court affirmed the denial of his motion to determine mental retardation. *King*, 960 So. 2d at 428. King now reasserts this issue in his instant petition for post-conviction relief.

¶20. In previously considering this issue, this Court found that, although *Chase* had not been decided at the time of the 2003 resentencing trial, King's hearing complied with the procedures discussed in *Chase*. Further, this Court found:

Here, both sides presented expert testimony and other evidence regarding King's mental retardation claim. After hearing all the evidence, which was substantial, the trial judge outlined the evidence that he had considered and gave his reasons for concluding that King was not mentally retarded.

12

> ***Chase*** merely affords a defendant a hearing if that defendant fulfills certain requirements. King fulfilled those requirements and had his hearing. For these reasons, we find that King was afforded a hearing on his mental retardation claim in satisfaction with the procedures outlined in ***Chase***. Therefore, we find no error with regard to this issue.

***King***, 960 So. 2d at 428.

¶21. Accordingly, King is procedurally barred from reasserting this issue. *See* Miss. Code Ann. § 99-39-21(3) (Rev. 2007). Further, King fails to offer any evidence sufficient to overcome the procedural bar as required by Mississippi Code Section 99-39-21(6).

**VI. Petitioner was denied his rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the federal Constitution and Mississippi law due to the cumulative effect of the errors at trial.**

¶22. This Court previously has found:

> King argues that the aggregate of errors in this case requires reversal of his death sentence. This Court's review of death penalty cases takes into account the aggregate effect of the variety of errors that appear in a capital sentencing trial. ***Flowers v. State***, 842 So. 2d 531 (Miss. 2003). This Court may reverse a sentence based upon the cumulative effect of errors that, by themselves, do not independently require a reversal. ***Jenkins v. State***, 607 So. 2d 1171, 1183-84 (Miss. 1992). A review of the record, the briefs , and the arguments shows that there were no individual errors which required reversal and that there is no aggregate collection of minor errors that would, as a whole, mandate a reversal of either the conviction or sentence. Therefore, this issue is without merit.

***King***, 960 So. 2d at 447. Therefore, King is procedurally barred from reasserting this issue. *See* Miss. Code Ann. § 99-39-21(3) (Rev. 2007). Notwithstanding the procedural bar, as we have found no error, there is no cumulative error and this issue is without merit.

**VII. The sentence is disproportionate and in violation of the Eighth and Fourteenth Amendments to the United States Constitution and corresponding portions of the Mississippi Constitution.**

¶23. King asserts that "the aggravating circumstance of a murder for hire resulted in petitioner's capital murder conviction" and the imposition of a disproportionate sentence. However, this was not a murder-for-hire case. Therefore, this issue is without merit.

## CONCLUSION

¶24. Accordingly, for the reasons stated herein, Mack Arthur King's application for leave to seek post-conviction relief is denied.

¶25. **POST CONVICTION RELIEF DENIED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. DICKINSON, J., CONCURS IN PART WITHOUT SEPARATE OPINION. KITCHENS, J., DISSENTS WITH SEPARATE OPINION JOINED IN PART BY DICKINSON, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶26. The doctrine of res judicata is integral to the functioning of our legal system, but there are times when procedural bars must yield to the exigencies of justice. This case presents such an instance, literally a matter of life and death, and the Court should not forego this opportunity to remediate its prior improvidence before the federal courts do. Because the previous opinion, which provides the basis for the majority's denial of relief, is afflicted by significant factual and legal errors in its analysis of King's claims regarding expert assistance, mental retardation, and mitigation evidence, I respectfully dissent.

**Expert Assistance**

¶27. As the majority notes, this Court affirmed the trial court's denial of funding for a mental health expert, reasoning that King had failed to demonstrate a "substantial need" for such an expert. *King v. State*, 960 So. 2d 413, 423 (Miss. 2007) (quoting *Holland v. State*,

14

705 So. 2d 307, 333 (Miss. 1992)). The facts and applicable case law demonstrate the error of that holding.

¶28. Before resentencing, King moved for funding for experts to assist him with his *Atkins* claim. *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002). In support, he attached to his motion the 1984 trial testimony of Dr. Robin D. King, a psychologist who had assessed the defendant's intelligence quotient (IQ) to be 71 and had testified that the margin of error would place Mack Arthur King in the mentally retarded range. King also attached the 1998 testimony of state psychologist, Dr. Michael Whelan. Dr. Whelan also concluded that King's IQ was 71, but disagreed that King was mentally retarded. Finally, King attached an affidavit from Dr. Caroline Everington, an expert in the field of mental retardation, which stated that further testing would be required to make an accurate *Atkins* determination. She noted that: the previously-administered tests were outdated; an evaluation of adaptive skills and developmental delays would be required; and that a psychologist would need to compile a complete social history. The trial court heard oral arguments and later denied the motion in a two-sentence order.

¶29. The seminal case regarding funding for psychiatric services for indigent criminal defendants is *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1975). *Ake* held that when an indigent defendant makes a preliminary showing that "his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Id.*, 470 U.S. at 83. On direct appeal, the State argued that *Ake* was limited to cases in which the

15

defendant raised an insanity defense or the State planned to present psychiatric evidence at sentencing. *King I*, 960 So. 2d at 420. Although this Court quoted *Ake* at length, it did not decide whether the State's argument was valid. *Id.* at 420-21. What the Court did do was apply the "abuse of discretion" standard appropriate for reviews of funding denials for consultants or investigators, concluding, "[a]fter reviewing the evidence in the record . . . we find that King has not shown the 'substantial need' required to obtain funds for an independent expert." *Id.* at 423 (quoting *Holland v. State*, 705 So. 2d 307, 333 (Miss. 1992)).

¶30. *King I* did not fully develop the important interplay between *Atkins* and *Ake*. Under *Ake*, when a defendant's mental condition is a critical factor, the Fourteenth Amendment's due process guarantees *require* the State to provide an indigent criminal defendant with expert assistance. 470 U.S. 68. As *Ake* makes clear, "[t]his Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." *Id.* at 76. Because, under *Atkins*, a successful showing that he is mentally retarded would foreclose the penalty of death, King most certainly demonstrated "a substantial need" to trigger his constitutional right to a mental health expert's assistance.

### *Atkins* **Hearing**

¶31. I also disagree with the determination that the procedure employed to address the issue of King's mental retardation was sufficient to comply with *Chase v. State*, 873 So. 2d 1013 (Miss. 2004). This Court's decision in *King I* misapprehended the underlying facts, resulting in a substantial injustice that must be corrected.

16

¶32. On direct appeal, this Court held that "[a]lthough *Chase* had not been decided at the time of King's 2003 resentencing trial, we find that [the] hearing sufficiently complied with the procedures discussed in *Chase*." *King I*, 960 So. 2d at 427. In support of this holding, the Court asserted that "both sides presented expert testimony and other evidence regarding King's mental retardation claim. *After* hearing all the evidence, which was substantial, the trial judge outlined the evidence that he had considered and gave his reasons for concluding that King was not mentally retarded." *Id.* at 426 (emphasis supplied).

¶33. However, while evidence of mental retardation was presented during his resentencing hearing, the trial judge had concluded that King was not mentally retarded *prior* to trial. This ruling took place in chambers, following brief oral arguments, and without a full evidentiary hearing. During this proceeding, no witnesses were called to testify, and only one document was received into evidence. *Chase* requires that the "the matter should proceed as other *evidentiary hearings* on motions," 873 So. 2d at 1029 (emphasis added); but what actually occurred in this instance was nothing more than oral argument by counsel.

¶34. *Chase* also requires that "[t]he factors to be considered by the trial court are the expert opinions offered by the parties, and other evidence of limitations, or lack thereof, in the adaptive skill areas listed in the definitions of mental retardation approved in *Atkins*." *Id.* Thereafter "the trial court shall place in the record its finding and the factual basis therefor." *Id.* Yet, in the present case, there is no order or judgment that sets forth the factual basis for the court's finding, and there is no formal recitation of the factors considered by the trial judge. The oral arguments were immediately followed by a declaration by the trial judge that King did not appear retarded, based on a 1971 report card. The judge pointed to a comment

17

from King's grade-school teacher that "He could do his work if he attended regularly." The trial judge went on to say that his wife was a retired school teacher and that "these school teachers sometimes are real observant."

¶35. This abbreviated pretrial proceeding failed to meet the due process requirements of *Chase*. King was not afforded a hearing on his mental retardation claim in satisfaction of the procedures outlined in *Chase*. The bulk of the proof relating to King's mental retardation issues was presented to the jury as mitigating evidence, *after* the trial court already had determined that King was not mentally retarded. As a result, King was deprived of a meaningful *Atkins* hearing at which he could present the testimony of expert and lay witnesses, and cross-examine the State's witnesses.

**Mitigation Evidence**

¶36. Finally, by holding that King is procedurally barred from raising the issue of mitigation evidence, this Court is ratifying a decision in direct conflict with holdings of the United States Supreme Court.

¶37. As on direct appeal, King argues that by preventing him from cross-examining the State's witnesses on the circumstances of Mrs. Patterson's murder, he was precluded from arguing relevant mitigating evidence. *King I*, 960 So. 2d at 460. At resentencing, following the State's examination of a pathologist who testified regarding Mrs. Patterson's final moments, King attempted to cross-examine Sheriff Ray Griner on the absence of physical evidence connecting King to the murder scene. The State objected that such elicitation would amount to a relitigation of the trial's guilt phase, to which King had no constitutional right under the United States Supreme Court's decision in *Oregon v. Guzek*, 546 U.S. 517, 126

18

S. Ct. 1226, 163 L. Ed. 2d 1112 (2006).  On direct appeal, this Court agreed with the State, concluding that King was attempting to present evidence of "residual doubt."  *King*, 960 So. 2d at 436-39.

¶38.    In *Guzek*, the high court found no Eighth Amendment right to adduce evidence of actual innocence during the sentencing phase of a bifurcated murder trial.  546 U.S. 517.  However, evidence of actual innocence is distinguishable from mitigation evidence, which is not prohibited.  Writing for the six-justice majority, Justice Breyer explained that this sort of mitigating evidence is that "evidence that tend[s] to show *how*, not *whether*, the defendant committed the crime."*Id.* at 524 (emphasis included).  Evidence of actual innocence, on the other hand, is "evidence directly inconsistent with the jury's finding of guilt."  *Id.*  The proper inquiry in the instant case, therefore, is whether the evidence offered by King would have shown *how* the crime was committed or *whether* the crime was committed.

¶39.    Under Mississippi law, one need not have had his hands at the throat of the victim at the moment of death to be found guilty of murder.  Likewise, although our capital punishment statute seeks to identify the worst of the worst, it leaves open the possibility of a death penalty for a defendant whose intent rises only to the level of a "contemplat[ion] that lethal force be employed." Miss. Code Ann. § 99-19-101 (Rev. 2007).

¶40.    The testimony sought by King straddles a fine line. Undoubtedly, King wanted to illustrate that his were not the hands that gripped Mrs. Patterson's neck and held her beneath the water (in other words, that he did not personally commit the *act* of capital murder).  But just as clearly, even if this were true, King still would be guilty of capital murder by virtue of his involvement in the burglary that resulted in Mrs. Patterson's death.  Said another way,

19

he still would be guilty of the *crime* of capital murder. Therefore, because adducing such evidence in the penalty phase would not have undermined the guilty verdict, it would not have constituted "evidence directly inconsistent with the jury's finding of guilt." ***Guzek***, 546 U.S. at 524. In other words, the evidence "show[s] *how*, not *whether*, the defendant committed the crime." ***Id.*** Specifically, the evidence would have been offered for the purpose of suggesting, not that King should not have been convicted, but rather that his absence from Mrs. Patterson's immediate murder scene foreclosed a finding that he had acted heinously, atrociously, or cruelly. *See* Miss. Code Ann. § 99-19-101(5)(h) (Rev. 2007).

¶41. Whether the jury would have accepted that argument is another question, of course. They might have concluded that King's mere presence on the premises where the homicide was perpetrated, and his participation in the underlying felony of burglary, constituted an acquiescence to the killing, and that this behavior was in and of itself heinous, atrocious, or cruel. But that would have been, and should have been, properly left to the jury.

¶42. For the limited purpose of demonstrating how, not whether, King committed the crime of capital murder, he should have been permitted to adduce evidence showing that he was not present in the very room in which the accomplice strangled and drowned Mrs. Patterson, and thus he did not physically and personally participate in that awful process. This Court's ruling to the contrary amounted to error under the U.S. Supreme Court's ruling in ***Oregon v. Guzek***.

¶43. King should have been afforded the opportunity to adduce evidence before the sentencing jury (in this case, not the same jury that had sat in the guilt phase of the bifurcated trial) that he was not even in the same room where Mrs. Patterson was slain, in order for

20

those jurors to assess whether *he* had acted heinously, atrociously, or cruelly. The trial court's ruling to the contrary deprived King of relevant, and likely valuable, mitigation evidence.

**Conclusion**

¶44. While recognizing and respecting the venerable doctrine of res judicata, I am unable to ignore the serious shortcomings of ***King I***, and I lament our failure to seize upon today's opportunity to rectify the momentous errors of that decision. Accordingly, I respectfully dissent.

**DICKINSON, J., JOINS THIS OPINION IN PART.**