CARLTON, J.,
for the Court:
¶ 1. Christopher Jackson was convicted of armed robbery in the Tunica County Circuit Court and sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended. Jackson now appeals his sentence and conviction, arguing that the weight of the evidence presented at trial does not support the verdict. Jackson also makes a claim of ineffective assistance of counsel.
FACTS
¶ 2. On November 10, 2010, Lieutenant James Jones of the Tunica County Sheriffs Department, along with several other narcotics-enforcement officers, hired Murray Smith to make street-level purchases of controlled substances. The officers gave Smith $40 of government money to use to purchase the substances, and they wired him with a body camera. Smith also called the officers on his cell phone and left the connection open so that the officers could hear any conversation he might en *1158 gage in while attempting to purchase a controlled substance.
¶ 3. While being monitored by Lieutenant Jones and the other officers, Smith encountered Melvin Davis and Timmy Davis, who both indicated to Smith that they would sell Smith $40 worth of crack cocaine. Melvin told Smith he had to obtain the drugs first, and instructed Smith to wait in a nearby park.
¶ 4. Smith waited in the park, and Melvin arrived a few minutes later. He told Smith that Timmy would arrive soon with the cocaine. When Timmy arrived, he failed to produce any drugs. Jackson arrived on the scene shortly after. Within moment of Jackson’s arrival, Melvin pointed a gun at Smith and demanded that Smith give him his wallet, the $40, as well as Smith’s own personal cash and an un-cashed loan check in the amount of $1,000. All of this was captured by the officers on video recording. When the officers saw Melvin with the gun, they immediately arrived on the scene. Melvin, Timmy, and Jackson all ran off as the officers approached. Timmy soon turned himself in. Officers arrested Melvin later that same day, and Jackson was arrested two days later. All three were charged with armed robbery.
¶ 5. At his trial held April 23-24, 2012, Jackson testified in his own defense and claimed that he did not know that Melvin and Timmy were planning to rob Smith. Jackson also testified that he did not provide the gun for the robbery. However, Melvin testified that Timmy and Jackson gave him the gun and told him to rob Smith, and that if Melvin failed to do so, Timmy and Jackson would kill him. Melvin admitted that he held the gun on Smith and demanded the money from him.
¶ 6. Smith also testified and gave details about the robbery. He also testified that Jackson was a “one hundred percent participant” in the robbery. Lieutenant Jones testified that he watched Jackson during the robbery, and he observed Jackson tell Smith to drop his wallet. Lieutenant Jones also testified that after he arrested Jackson, Jackson made a voluntary statement that he provided the gun used in the robbery.
¶ 7. The jury found Jackson guilty of armed robbery, and the trial court sentenced Jackson to a term of twenty years in the custody of the MDOC, with five years suspended, to run consecutively to any and all sentences previously imposed. The court ordered that the suspension of the sentence was to commence after Jackson had served fifteen years in an institution under the supervision and control of the MDOC. Jackson filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the circuit court denied. Jackson now appeals his conviction and sentence, arguing that his guilty verdict was not supported by the weight of the evidence. Jackson contends that although Lieutenant Jones stated that he observed Jackson order Smith to drop his wallet, Smith testified that Jackson never spoke to him during the robbery. Jackson also claim Lieutenant Jones lied when he provided testimony that Jackson admitted to providing the gun used in the robbery.
¶ 8. Additionally, Jackson claims that he received ineffective assistance of counsel during his trial. He argues that his attorney should have asked the trial court to suppress Jackson’s recorded interrogation.
STANDARD OF REVIEW
¶ 9. We review the denial of a post-trial motion seeking a new trial under an abuse of discretion standard. Dilworth v. State, 909 So.2d 731, 736 (¶ 17) (Miss.2005).
*1159 DISCUSSION
¶ 10. Jackson argues that the trial court erred by denying his post-trial motion because the verdict was against the overwhelming weight of the evidence. The standard of review for determining whether a jury verdict is against the overwhelming weight of the evidence is well settled. Our supreme court has established that an appellate court will not grant a new trial “unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.” McLendon v. State, 945 So.2d 372, 385 (¶ 40) (Miss.2006) (citing Groseclose v. State, 440 So.2d 297, 300 (Miss.1983)).
¶ 11. The State contends that three eyewitnesses testified at trial that Jackson was present during, and participated in, the robbery of Smith. Smith identified Jackson at trial, and Smith testified that during the robbery Jackson and Timmy “encircled [him] so that [he] could not back up or get away” while Melvin held the gun on him. Melvin also provided testimony that Jackson threatened to kill him if he did not rob Smith.
¶ 12. The State refutes Jackson’s claims that the verdict was not supported by the weight of the evidence and submits that the three eyewitnesses testified to Jackson’s participation in the crime, which constituted ample evidence to convict Jackson. The jury heard the evidence and determined the weight and credibility of the testimony of Melvin, Smith, and Lieutenant Jones.
¶ 13. In Ford v. State, 737 So.2d 424, 425 (¶ 8) (Miss.Ct.App.1999), this Court stated that the jury possesses the responsibility of “weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed.” (Citation omitted). The Ford Court continued to explain:
The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity. “It is not for this Court to pass upon the credibility of witnesses[,] and where evidence justifies the verdict it must be accepted as having been found worthy of belief.”
Id. (Internal citations omitted). Additionally, the supreme court established that “the testimony of a single witness is sufficient to support a conviction.” Id. (citing Doby v. State, 532 So.2d 584, 590 (Miss.1988)). After reviewing the record, we cannot say that Jackson’s guilty “verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.” McLendon, 945 So.2d at 385 (¶ 40).
¶ 14. Jackson also claims that his trial counsel was ineffective for failing to suppress his recorded interview with the police officers. To prove ineffective assistance of counsel, Jackson must show that: (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that a counsel’s performance falls within the range of reasonable professional assistance. Id. at 689. To overcome this presumption, “[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694.
¶ 15. This Court has recognized that when a claim of ineffective assistance of counsel is raised on direct appeal, rather than in a motion for post-conviction relief, *1160 the claim should be addressed only when “(1) the record affirmatively show[s] ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.” Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999). Review on direct appeal of an ineffective-assistance-of-counsel claim is confined strictly to the record. Id. at 1102 (¶ 6).
¶ 16. The transcript reflects that when the State sought to admit the audio recording into evidence, the prosecutor explained that he only wanted to play a portion of the tape for the jury. Jackson’s counsel, however, stated that playing the tape in its entirety would have evidentiary value by providing exculpatory evidence supporting Jackson’s theory of the case.[1] The audio recording of the interview' reflects that Jackson denied having prior knowledge of the robbery or participating in it, and reveals Jackson calling people in an attempt to locate the gun used in the robbery. However, Jackson claims that the phone calls he made during the interrogation were to people who had no knowledge of the location of the gun. Jackson maintains that he knew nothing about the plan to rob Smith and that he did not provide the gun. He submits that by admitting the recording into evidence, which shows Jackson making phone calls in an attempt to locate the gun, it appeared to the jury that Jackson did indeed have knowledge about the location of the gun. Jackson asserts that he made the phone calls in a vain attempt to help the officers try and find the gun as a result of the officers’ repeated promises of leniency.
¶ 17. The trial transcript suggests that Jackson’s counsel requested admission of the entire audio recording of Jackson’s interrogation with the police officers to be admitted into evidence as part of his trial strategy, instead of allowing the State to admit only a portion of the recording. We utilize an abuse-of-discretion standard when reviewing a trial court’s decision to admit evidence. Palmer v. State, 986 So.2d 328, 331 (¶ 12) (Miss.Ct.App.2007).[2] In considering a claim of ineffective assistance of counsel, an appellate court must “strongly presume that counsel’s conduct falls within a wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy. In other words, defense counsel is presumed competent.” Bennett v. State, 990 So.2d 155, 158 (¶ 9) (Miss.2008) (internal citation and quotation marks omitted). The record reflects that defense counsel at trial possessed strategic reasons to seek admission of the entire recording, as opposed to excerpts chosen by the State, and the record supports the admission of the recording as more probative than prejudicial towards Jackson. Regardless of whether Jackson’s counsel should have filed a motion to suppress the recording of the interrogation, we find that any error by the trial court in the admission into evidence of the entire audio recording of Jackson’s interrogation with the police officers, revealing Jackson’s efforts to locate the gun, is harmless. See McGee v. State, 907 So.2d 380, 385 (¶ 18) (Miss.Ct.App.2005). We find the record fails to “affirmatively show ineffectiveness of con *1161 stitutional dimensions.” Colenburg, 735 So.2d at 1101 (¶ 5). Accordingly, we find this issue lacks merit on direct appeal, without any prejudice to subsequent review on a petition for post-conviction relief.
1118. THE JUDGMENT OF THE TU-NICA COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS SUSPENDED, AND TO PAY $500 TO THE CRIME VICTIMS’ COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, FAIR AND JAMES, JJ„ CONCUR. ROBERTS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. This action originally included Timmy Davis as a codefendant in the trial, but due to the admission of the audio recording into evidence, the trial court granted the request to sever Timmy from the present case and try him separately.

. See also M.R.E. 403 (trial judge must perform balancing test to weigh probative or prejudicial value of evidence when determining whether to exclude or admit evidence).