# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-00021-SCT

*BRENDA LIDDELL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/25/2007 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | W. DANIEL HINCHCLIFF |
| | LESLIE S. LEE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/05/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., DICKINSON AND LAMAR, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     In this felony drug-sale case, the defendant claims she received ineffective assistance of counsel at trial. Because we find her trial counsel's actions fell within the large ambit of "reasonable professional assistance," we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2.     Mississippi Bureau of Narcotics Agent Luis Hawkins, Tunica Police Officer Chris Smith, and a confidential informant ("C.I.") set up a drug buy at Brenda Liddell's home. The officers equipped the C.I. with a camera and microphone and sent him to Liddell's home to buy an ounce of cocaine. When he arrived, Liddell told him that she did not have any

cocaine ready to sell, but to come back in a couple of hours. The C.I. returned to the post-buy location, where Hawkins and Smith instructed him to return to Liddell's house and buy whatever she was selling.

¶3. The C.I. returned to Liddell's house and asked her if she had any "footballs."[1] Liddell responded that she did, and the C.I. bought the twenty-three dosage units that she had. Although the C.I. discussed the transaction with Liddell, Catherine "Doll" Bogan actually handed him the pills and took the money. The C.I. then asked Liddell when she would have some cocaine ready, and she responded "in about twenty or thirty minutes." The C.I. left Liddell's house with the Xanax and reported back to Hawkins and Smith.

¶4. While at the post-buy location, the C.I. received a call from Liddell telling him to "come on." He returned to Liddell's house to buy the cocaine. Liddell instructed the C.I. to place the $800 on the counter, and to retrieve the cocaine from a glass bowl on the table. Liddell took the $800 from the counter and put it in the pocket of her bathrobe. The C.I. returned to the post-buy location and turned the cocaine over to Hawkins and Smith.

¶5. Liddell was indicted on two counts of "unlawfully, wilfully and feloniously and without authority of law selling, transferring or delivering" a controlled substance. Wilbert Johnson was appointed as her public defender. At trial, the State called Agent Hawkins as a witness. He testified that he recognized Liddell's voice on an audio recording of the drug transaction. The jury acquitted Liddell of Count I – the sale of the Xanax – but found her guilty of Count II, the sale of cocaine. She was sentenced to ten years in prison, with five years suspended. Liddell filed a motion for judgment notwithstanding the verdict (JNOV),

[1]Agent Hawkins testified that this phrase is slang for Xanax (chemical name, alprazolam).

or in the alternative, for a new trial, which the trial judge denied. She timely filed a notice of appeal. Her public defender subsequently was allowed to withdraw as counsel, and the Office of Indigent Appeals was substituted as counsel on appeal. Liddell argues on appeal that the trial court erred when it failed to *sua sponte* order a mistrial due to ineffective assistance of counsel.

## ANALYSIS

¶6. The United States Supreme Court established the now-familiar standard for determining whether a defendant received ineffective assistance of counsel in ***Strickland v. Washington***, 466 U.S. 668 104 S. Ct. 2052, 80 L. Ed. 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The Supreme Court also stated:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct

3

falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689. "In considering a claim of ineffective assistance of counsel, an appellate court must strongly presume that counsel's conduct falls within a wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy. In other words, defense counsel is presumed competent." **Bennett v. State**, 990 So. 2d 155, 158 (Miss. 2008).

¶7. Liddell argues that her trial attorney provided ineffective assistance of counsel in three instances: (1) when he allowed Agent Hawkins to testify that it was Liddell's voice on the audio recording without proper authentication or predicate, and then provided the authentication himself on cross; (2) when he elicited on cross examination the C.I.'s many previous trips to Liddell's house and neighborhood to purchase drugs; and (3) when he stipulated to "Doll" Bogan's[2] conviction.

*Agent Hawkins's Testimony*

¶8. Liddell first argues that her attorney was deficient when he allowed Agent Hawkins to identify her voice on the audio recording of the drug transaction without proper predicate or authentication. Specifically, Liddell states that "[u]ntil the State laid the predicate that Hawkins was familiar with [her] voice, it was error to admit the testimony that [she] was speaking or that it was her voice on the recordings." Additionally, Liddell argues that her attorney's elicitation of the authentication on his cross-examination of Agent Hawkins was deficient. Her arguments fail for two reasons.

---

[2] Bogan was also indicted, tried, and convicted.

4

¶9. First, Agent Hawkins's testimony that it was Liddell's voice he heard on the recording is not subject to the authentication requirement of MRE 901. The State was not trying to admit the audiotape itself into evidence. Thus, no authentication of the tape itself was required. Accordingly, the failure to object to the authentication of Agent Hawkins's testimony was not ineffective assistance of counsel. Additionally, the failure of Liddell's attorney to require the State to "lay the predicate" for Agent Hawkins's testimony is harmless error, as we are not left to guess whether Agent Hawkins had personal knowledge of Liddell's voice, as he testified to that effect on cross-examination.

¶10. Liddell's second argument regarding her attorney's handling of Agent Hawkins's testimony is inconsistent with her first argument. She argues on one hand that her counsel's failure to object to Agent Hawkins's testimony was deficient, while on the other hand she argues that his attempt to do so on cross-examination was deficient as well.[3] Inconsistency aside, Liddell's argument must fail, as she did not establish the second prong of the *Strickland* test, that is, that she was prejudiced by her attorney's statements on cross. *Strickland*, 466 U.S. at 687. Even assuming that his elicitation of Agent Hawkins's previous dealings with Liddell was so deficient as to meet the first prong, plenty of other evidence exists – such as the clear, unequivocal testimony of the C.I., Smith, and Hawkins – to support the jury's verdict. In other words, her attorney's cross-examination of Agent Hawkins did not "deprive Liddell of a fair trial," or result in a trial that was "unreliable."

---

[3]The following dialogue transpired between Liddell's attorney and Agent Hawkins on cross: "Q: You had heard [Liddell's] voice before? A: I have. Q: How did you – on the telephone or in person? A: Are you asking me specifically how I – ? Q: How you heard her voice? A: Did you just open the door for me to step through? Q: Uh, I asked you a question. A: Okay. Well, the – I recognized her voice from previous sale cases."

5

*The C.I.'s Previous Trips to Liddell's House*

¶11.    Liddell next argues that her attorney erred during his cross-examination of the C.I. by eliciting testimony about several previous drug buys from Liddell.  However, we can not rule out the possibility that the cross-examination was a "sound trial strategy," designed to raise reasonable doubt in the minds of the jurors as to whose drugs the C.I. actually purchased. In fact, during closing argument, Liddell's attorney stated:

> He [the C.I.] testified to you truthfully somewhat, crack ring.  All around. People in and out.  I counted eight until I put my hand down.  And somebody in a wheel chair, John. . . . [Y]ou don't go thinking, well, she probably did. Maybe she did.  Well, she was in the wrong place at the wrong time.  Man, they got a lot of bad stuff going on.  She should have known better.  That's not the law.  The law is, when you bring charges against somebody, you need to prove every element of the crime beyond a reasonable doubt!  You have to show that she sell [sic], transferred or delivered cocaine!  You have to show that the sell [sic], transferred or delivered the other drug, the footballs, or whatever you want to call them.  Not assume.  They assumed it was her house. No.  She was there.  Everybody was there.  A lot of people were there . . . Well, this is in the neighborhood stuff.  In the neighborhood stuff.  You in the wrong place.  That's good enough.  You in the wrong place.  That's good enough for proof.  Well, I don't want to hear no more.

¶12. We cannot rule out the possibility that Liddell's attorney elicited testimony about previous drug buys from her house and neighborhood in an attempt to raise reasonable doubt in the minds of the jurors.  Accordingly, we hold that Liddell's attorney's actions in this area fell within the "wide range of reasonable professional assistance."

*"Doll" Bogan's Conviction*

¶13.    Liddell's final argument is that her attorney erred when he stipulated to "Doll" Bogan's conviction.[4]  This decision, too, may very well have been "sound trial strategy," as

---

[4]The following exchange transpired between the trial court and the attorneys:  "State: Your Honor, the State has a stipulation it would like to make with defense counsel essentially as to – I

6

Liddell's attorney mentioned Bogan's conviction during his closing argument in an effort to discount the C.I.'s testimony about Liddell, stating:

> I'm saying he was paid to get the goods on Brenda Liddell. He got the goods on Catherine Bogan, and she came into this very courtroom and pleaded guilty. He got the goods on her. He didn't get paid for it. So, when they said go back and do it again, this man testified to you with your ear, not my bad ear, that he got $500.00 for an ounce. You get $500.00 if it's Brenda Liddell. You get zero if it's Catherine Bogan.

Thus, the stipulation of "Doll" Bogan's conviction was not ineffective assistance of counsel.

**CONCLUSION**

¶14.   For the reasons stated herein, because the trial court did not err in its refusal to *sua sponte* order a mistrial due to ineffective assistance of counsel, we affirm the conviction and sentence of the Circuit Court of Tunica County in this case.

¶15.   **COUNT II: CONVICTION OF SALE OF COCAINE AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE (5) YEARS SUSPENDED, AFTER SHE HAS SERVED FIVE (5) YEARS, WITH CONDITIONS, AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR.   GRAVES, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.   KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY GRAVES, P.J.**

**KITCHENS, JUSTICE, DISSENTING:**

---

haven't got it marked. I'm sorry. Excuse me. Court: What's this, Wilbert? He said there's a stipulation? Liddell's attorney: A stipulation as to the conviction of Catherine Bogan. Court: As to what? Liddell's attorney: Catherine Bogan. We are stipulating that she has been convicted in this cause number. Court: Oh, the co-defendant? State: To that, your Honor, I would like to ask for the introduction of State's Exhibit 8, which is the sentencing judgment and proof of conviction of Catherine Bogan in cause number 2007-0144 as to Count I. Court: Any objection? Liddell's attorney: No objection. Court: S-8 is admitted without objection." This was the entire exchange as to Bogan's conviction.

¶16. The record in this case chronicles a legal sideshow that must have been a bewildering wonder to behold at trial. Though comedic infirmities do not necessarily give rise to constitutional ones, the facts of this case lead me to conclude that the performance of Liddell's attorney was as counterproductive as it was unorthodox. Because the Court concludes that Liddell received effective assistance from her attorney, I dissent.

¶17. I do not take issue with the majority's determination that Wilbert Johnson, Liddell's public defender, came to the courthouse with some sort of strategy. The record demonstrates that lawyer Johnson endeavored to portray Liddell's trailer as a "drug house" and to paint everyone around his client with a dirty brush, hoping thereby to create reasonable doubt as to whether the drugs in question actually belonged to Liddell. *See* Maj. Op. at ¶11 and n.4.

¶18. Even if this was a sound trial strategy, the means by which Johnson undertook its execution were bizarre and contrary to his client's best interest. On cross-examination of Agent Hawkins, Johnson's elicitation of testimony regarding Liddell's prior offenses was so egregious that Hawkins himself seemed stunned by the line of questioning. Johnson elicited similar testimony from the police informant, who was more than willing to indulge Johnson's inquiries about the "many people in and out" of this "drug house." Maj. Op. at 6, n. 4.

¶19. Johnson's decision to allow "Doll" Bogan's conviction into evidence is particularly perplexing. Had the State presented this fact to the jury on its own initiative, the trial judge would have been compelled to declare a mistrial. ***Robinson v. State***, 465 So. 2d 1065, 1068 (Miss. 1985) (noting that one co-defendant's guilty plea "is not competent evidence on the trial of the other because such plea of guilty or conviction is not evidence of the guilt[] of the party being tried."). How Johnson reasoned that this radioactive information, constitutionally

8

prohibited under normal circumstances, would cast a more innocent light upon his client is beyond me, and any explanation surely must wander beyond what we recognize as objectively reasonable. *See Bennett v. State*, 990 So. 2d 155, 158 (Miss. 2008).

¶20.    Under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984), an attorney's representation must be both deficient and prejudicial in order to deprive the client of her Sixth Amendment right to counsel. I would not hesitate to hold that Johnson's performance exceeds both requirements. It is one thing to miss the mark. It is quite another to blaze away at one's own foot and his client's foot as well.

¶21.    Even if I found defense counsel's performance constitutionally adequate under *Strickland*, I still could not join the majority's opinion because it  misapplies the *Strickland* test.

¶22.    The right of a criminal defendant to counsel, guaranteed by the Sixth Amendment to the U.S. Constitution and Article 3, Section 26 of the Mississippi Constitution, is fulfilled only by an attorney's *effective* assistance. This does not mean that the lawyer must win, but it most assuredly does mean that the lawyer must not sabotage his client's defense, wittingly or unwittingly.

¶23.    Inquiries into an attorney's effectiveness must be objective in nature, not subjective as today's majority opinion implies. The majority reaches its conclusion after determining that counsel for Liddell took steps at trial that "may very well have been" intentional. Maj. Op. at ¶13. But the attorney's subjective intent is irrelevant. Rather, this Court always has concerned itself with the objective inquiry of whether "counsel's conduct falls within a wide

range of reasonable professional assistance . . . ." ***Bennett v. State***, 990 So. 2d 155, 158 (Miss. 2008).

¶24. This case well illustrates the danger of transforming the ***Strickland*** analysis into a subjective inquiry. The record provides little room for doubt that Johnson intended to take the steps that form the basis of Liddell's appeal, but that intent does not render the decisions objectively reasonable or his assistance effective. Indeed, intent is irrelevant on the question of reasonableness. If our inquiry looks to subjective intent, then ***Strickland*** will be effectively eviscerated, save for when inadequately performing attorneys mistakenly trip up on their own vain strategies.

¶25. Accordingly, because I would reverse the defendant's conviction and remand for a new trial aided by the guidance of a constitutionally effective defense attorney, I respectfully dissent from the majority opinion.

**GRAVES, P.J., JOINS THIS OPINION IN PART.**