ISHEE, J.,
for the Court:
MODIFIED OPINION ON MOTION FOR REHEARING
¶ 1. The motion for rehearing is granted, and our original opinion is withdrawn, with this opinion substituted in lieu thereof.
¶ 2. Tyrone Hairston was convicted in the Lowndes County Circuit Court of grand larceny, and sentenced as a habitual offender to ten years in the custody of the Mississippi Department of Corrections (MDOC), without eligibility for probation or parole, for stealing $1,200 from his cousin, Charles Pratt. Hairston appealed, claiming: ineffective assistance of counsel due to his attorney’s statements during trial in which the attorney admitted that Hairston took the money. In our original opinion we found that the attorney’s statements did not rise to the level required to reverse a judgment for ineffective assistance of counsel, and we affirmed the judgment of the circuit court. Upon rehearing, Hairston asserts that an intervening decision by the Mississippi Supreme Court reversed prior case law. We agree. Based on the intervening decision, Gowdy v. State, 56 So.3d 540 (Miss.2010) (rehearing denied March 31, 2011), a criminal indictment cannot be amended to reflect habitual-offender status after the jury has returned a guilty verdict; therefore, Hair-ston’s sentence as a habitual offender constitutes an illegal sentence. Accordingly, we affirm Hairston’s conviction of grand larceny, but we reverse and remand this case for re-sentencing consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶3. On January 18, 2008, Pratt, Hair-ston’s cousin, hosted a gathering at his house in Columbus, Mississippi. Hairston and his girlfriend were present. All of the guests were drinking alcohol. At some point, Pratt went to sleep on his couch. When he woke up the next morning, Hair-ston and his girlfriend were gone, along with $1,200 in cash Pratt had put in his wallet the night before. Pratt notified the police, and Hairston was apprehended. The police retrieved $1,200 in cash from Hairston. After being questioned by the police, Hairston admitted that he had taken the money, but he insisted that he intended to give the money back to his cousin.
¶ 4. At trial, Pratt testified that he had received $1,600 in cash as a tax refund, which he put in his wallet. Before he went to sleep that night, he placed the wallet in the back pocket of his pants. He remembered only Hairston and Hairston’s girlfriend being present when he went to sleep on the couch. When he awoke, he noticed that money was missing from his wallet, so he called the police and informed them that he believed his cousin, Hairston, had stolen the money.
¶ 5. Officer Spence Wallingford, with the Columbus Police Department, testified that he located Hairston at a hotel after the call had been placed about the stolen money. Along with Officer Travis Robertson, Officer Wallingford interviewed Hair- *1166 ston and Hairston’s girlfriend at the hotel. Hairston initially stated that he did not know anything about the stolen money, but he later recanted his story and admitted that he had taken the money. Hairston then handed Officer Wallingford the cash, which he had been keeping in a duffel bag. Hairston was immediately arrested.
¶ 6. At trial, Officer Robertson corroborated Officer Wallingford’s testimony. Officer Robertson stated that after Hairston was arrested and taken into custody, he interviewed Hairston at the police station. Hairston admitted that he had taken the money, and he gave a sworn statement as to his version of the events that took place at Pratt’s house. Hairston claimed that after drinking heavily that night, Pratt “started talking and fussing because he was drunk.” Pratt’s comments made Hairston angry, so Hairston and his girlfriend decided to leave. Before he left, Hairston saw Pratt’s pants draped on the back of the couch, and noticed that Pratt’s wallet was in Pratt’s pants. Hairston then took $1,200 in $100 bills out of the wallet; then he left Pratt’s house. Hairston and his girlfriend went to a hotel to spend the night. Hairston claimed that he did not spend any of the money and never had any intention of spending the money.
¶ 7. At the beginning of Hairston’s defense, Hairston’s attorney made the following comment during his opening statement: “Sometimes you have a good set of facts, and sometimes you just don’t have such a good set of facts.” He also indicated that Hairston would testify in his defense and tell his side of the story.
¶ 8. During Hairston’s testimony, he stated that Pratt became drunk and verbally abusive that night, so Hairston and his girlfriend decided to leave and stay at a hotel. Hairston also stated that two other men were present that night, and there was “activity” going on that Hairston did not want to be around, since he had been drug-free for approximately five years. The men left, and Hairston assumed that they were going to a liquor store to buy more liquor. At that time, Pratt was “passed out” on the couch. Hairston noticed Pratt’s pants on the couch, and Pratt’s wallet was in the pants. In an effort to protect his cousin from the men coming back and stealing the money, Hair-ston testified that he took the money for safekeeping. Hairston stated that he had planned to return the money the next morning after Pratt had woken up. Hair-ston left Pratt’s house shortly before midnight; he was apprehended at the hotel the next morning a little before 7:00 a.m.
¶ 9. During his closing argument, Hair-ston’s attorney stated that his client did not deny taking the money, but it was the jury’s job to decide whether Hairston actually “stole the money.” A jury found Hairston guilty of grand larceny, and Hairston was sentenced as a habitual offender to ten years in the custody of the MDOC, without eligibility for probation or parole. Hairston now argues that he received ineffective assistance of counsel because his attorney made improper statements regarding his guilt during the defense’s closing argument.
STANDARD OF REVIEW
¶ 10. When discussing a claim of ineffective assistance of counsel, this Court follows the two-prong analysis originally set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Stringer v. State, 454 So.2d 468, 476 (Miss.1984). In order to prove ineffective assistance of counsel, Hairston must show the following: “First, ... that counsel’s performance was deficient.... Second, ... that the deficient performance prejudiced the defense.” Liddell v. State, *1167 7 So.3d 217, 219 (¶6) (Miss.2009) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel’s performance was deficient, and, but for that deficiency, the outcome of the case would have been different. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Further, this Court “must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” Liddell, 7 So.Bd at 219 (¶ 6) (citation omitted).
DISCUSSION
I. INEFFECTIVE ASSISTANCE OF COUNCIL
¶ 11. Hairston argues that his counsel improperly conceded Hairston’s guilt at trial. In order to determine whether Hairston’s counsel was deficient in his performance, it is necessary to review the specific comments made by the attorney. During his opening statement, Hairston’s attorney made the following remarks to the jury:
Thank you, Your Honor. As I’ve said earlier, I’m always humble [sic] by the privilege and ever mindful of the responsibility that I have as a citizen of Lowndes County to the jurors here. Sometimes you have a good set of facts, and sometimes you just don’t have such a good set of facts, [b]ut we do the best we can with what we have.
We’re going to put Mr. Hairston on the stand. Apparently he took the money. We’re going to put Mr. Hairston on the stand and let him tell you his story, and I think that would be my opening statement, Your Honor.
Hairston’s attorney later stated the following in his closing argument:
Now, we’ve made no — well, it’s undisputed that [Hairston] took the money, that he claims that he was going to take it to keep somebody from getting it. Okay. When he got to the hotel, he apparently checked into the hotel sometime that night relatively late. Preparing to go to work the next morning!, m]ixed his money with the $1[,]200 that belonged to Mr. Pratt, [sic] Put it in a glass case and put it in his duffel bag. Got up the — [sic] paid for the room apparently out of his money because Mr. Pratt’s $1[,]200 was still there and was recovered along with the balance of Mr. Hairston’s money. He paid for the room. I don’t know if they stopped and ate or anything. But regardless of what they did, the $1[,]200 that belonged, undisputedly belonged[,] to Mr. Pratt was still there, okay.
Now, the next morning, you know, did he have the opportunity to go spend it, to steal it, if you will. I don’t think he had a window of opportunity to do that because the police came over something before 7:00. Was he going to do that? I don’t know. That’s your job. That’s not mine. But the point of the matter is, the law says that he unlawfully, willfully, and feloniously! ] take, steal[,] and carried [sic] away whatever it is the grand larceny is charged. In this case the $1[,]200.
We know, that as I’ve said, that he got the money. We know that Mr. Pratt got his $1[,]200 back. He didn’t get $1[,]200 back in [$]20s or [$]5s or pay you next week. He got his $1[,]200 back sometime relatively the [sic] early the next morning. It was receipted [sic] to him by Officer Robertson. So we know he got his money back.
What we don’t know and what is your job to do is to determine if Mr. Hairston stole the money. Did he steal it? I don’t know. That’s your job, okay. I *1168 think there’s a mark [sic] difference. But what I think doesn’t matter.... Any rate, here we are. Now it’s your turn. You’ve heard the facts. You’ve heard the testimony, and you’ve heard all the arguments and fights and so forth and so on about what happened. Now it’s your turn. Thank you very much.
¶ 12. While the comments made by Hairston’s attorney may not be considered to be a vigorous defense on Hairston’s behalf, we do not find that these comments rise to the level of ineffective assistance of counsel. Hairston admitted to the police officers at the hotel and later, on the witness stand, that he had taken Pratt’s money. Yet he was able during his live testimony to provide his own explanation to the jury as to why he took the money. Thus, it was not improper for Hairston’s attorney to state that Hairston admitted that he had taken the money, as Hairston himself made that same admission on the witness stand. However, Hairston’s attorney failed to support that admission with an explanation and defense as to why Hair-ston took the money.
¶ 13. Nonetheless, Hairston has failed to prove that, but for the attorney’s comments, the outcome of the trial would have been different. It appears that the jury simply did not accept Hairston’s claim that he was only holding Pratt’s money for safekeeping. As such, Hairston cannot satisfy the second prong required by Strickland. Accordingly, we affirm the trial court’s judgment.
II. ILLEGAL SENTENCE
¶ 14. During the briefing of this ease, the supreme court issued Gowdy. In Gowdy, the supreme court held that an indictment cannot be amended to reflect habitual-offender status after a jury returns a guilty verdict. 56 So.3d at 546 (¶ 22). In the present case, the jury returned a guilty verdict on February 10, 2010. The record shows that over a year prior to trial, on May 12, 2008, Hairston disclosed on a pre-sentencing report that he had three prior felony convictions: one count of burglary and two counts of sale of marijuana. All three convictions were in Lowndes County, but the record is silent as to why he was not originally indicted as a habitual offender, or why the indictment was not amended prior to trial and after Hairston had declined to accept at least two plea offers by the State. On the day after the trial, February 11, 2010, the State moved to amend the indictment to reflect habitual-offender status. The circuit court granted the motion to amend on the following day, February 12, 2010. The circuit judge held a sentencing hearing on March 1, 2010, and stated he had set the date to allow the parties time to “investigate” habitual-offender status. The following day, on March 2, 2010, the circuit court sentenced Hairston to ten years as a habitual offender. At the time the circuit judge sentenced Hairston, the supreme court had not decided Gowdy; therefore, at that time, there was no prohibition against amending an indictment after a jury verdict to reflect habitual-offender status. While this issue was not raised in the briefs on the merits, which were filed before Gowdy issued, upon rehearing we find that this Court has no choice based on the holding in Gowdy but to affirm Hair-ston’s conviction, but we reverse and remand the case to the circuit court for re-sentencing.
¶ 15. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT OF CONVICTION OF GRAND LARCENY IS AFFIRMED, THE SENTENCE IS REVERSED, AND THIS CASE IS REMANDED FOR RE-SENTENCING.
*1169 ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ„ CONCUR. FAIR, J., NOT PARTICIPATING.