# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-01265-COA

JAMES CORY GILBERT                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                                   APPELLEE

DATE OF JUDGMENT:            10/12/2021
TRIAL JUDGE:                 HON. DAL WILLIAMSON
COURT FROM WHICH APPEALED:   JONES COUNTY CIRCUIT COURT,
                             SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: LAUREN GABRIELLE CANTRELL
DISTRICT ATTORNEY:           ANTHONY J. BUCKLEY
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 08/29/2023
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., LAWRENCE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.   James Cory Gilbert was tried on a three-count indictment in the Jones County Circuit Court and was found guilty of leaving the scene of an accident that caused mutilation, disfigurement, and/or destruction of a limb or organ of Mashayla Harper (Count I); aggravated driving under the influence (DUI) (Count II); and the DUI-related death of an unborn child (Count III). The trial court sentenced Gilbert to serve twenty years in custody for the conviction of Count I and twenty years in custody for the conviction of Count II. The court sentenced Gilbert to a term of twenty years in custody, with twelve years to serve and eight years suspended upon the completion of five years of post-release supervision, for the

conviction of Count III. The court ordered the sentences to run consecutively and imposed a $10,000 fine for the conviction of Count I. Gilbert appealed alleging four instances of ineffective assistance of counsel and contending that the State improperly drew attention to Gilbert's exercise of his right to remain silent during closing arguments.

## FACTS AND PROCEDURAL HISTORY

¶2. On January 4, 2020, Harper, who was eight months pregnant, was traveling westbound on Welch Road in Jones County, Mississippi. Gilbert was traveling eastbound on Welch Road when his vehicle veered into the westbound lane and collided with Harper's vehicle. Harper was severely injured and was transported to a hospital where her baby was stillborn.

¶3. The first person on the scene of the accident was Brad Thompson. Thompson had been hunting in the area until it got dark. While he was unloading his rifle and preparing to go home, he heard a loud boom, which he believed to be a car wreck. Thompson lived on Welch Road, and on his way home he came upon the scene of the accident. Thompson indicated his arrival was about five minutes after he heard the loud boom. There was debris on the road, and Thompson saw a pickup truck facing the wrong way on the shoulder of the westbound lane. Thompson stopped, approached the truck, and using only his cell phone light, saw that the truck had heavy damage to the left front area. He noted that all the doors to the truck were closed, but there was no occupant in the truck. He did not attempt to enter the truck at that time. When Thompson did not see anyone lying near the truck, he called out, but no one responded.

¶4. At that point, Thompson went back to where he encountered the debris in the road and

saw another vehicle about fifty- to seventy-five yards from the truck. He stressed how dark it was and the difficulty he was having seeing without the aid of any other light source. When he came within twenty-five or thirty yards of the second vehicle, he could see a silver car in what Thompson described as a "dirt drive" area. Thompson testified, "[T]here was bumpers, glass, maybe—maybe even a tire or a rim. There—it was just a bunch of stuff in the road." He could see the whole left side of Harper's car was heavily damaged. As he got within fifteen to twenty feet of the car, Thompson could see Harper lying on her back beside the car. He could tell she was pregnant. Thompson said Harper was not making any sounds, but he could see some movement. He called 911[1] and tried to talk with Harper, but she was incoherent. Thompson was advised by the 911 operator to roll Harper onto her left side. He described the difficulty he had getting Harper on her side due to her many injuries. An ambulance and deputies arrived a few minutes later.

¶5.    Jones County Deputy Sheriff Johnel Rogers arrived at the scene and began his investigation. Rogers ran the tag number of the truck and found that it was registered to Gilbert and his wife, Autumn Gilbert (Autumn).  Rogers began to inventory the contents of the truck before it was towed from the scene. He located a cell phone in the truck and was able to contact Autumn, who advised him that her husband had been in possession of the truck. Rogers testified that he was on the scene for about two hours and never saw Gilbert at the scene of the accident. During his inventory of the truck, Rogers found a small bag of marijuana and some paraphernalia. Rogers stated that he turned over all the evidence he

---

[1] The record shows that this call was received at 5:47 p.m.

collected to Jones County Investigator J.D. Carter.

¶6.     Deputy Patrick Oster, who arrived on the scene with Rogers, took photographs of both vehicles. After about thirty minutes, Oster left the scene and drove around the area looking for someone on foot but never found anyone. Rogers contacted Oster later that night and informed him that the driver of the truck was Gilbert and that Gilbert was at his father's house on Ira Gilbert Road. According to Oster, Gilbert's father's house was roughly fifteen minutes from the scene of the accident. While Oster was en route to Ira Gilbert Road, the sheriff's office central dispatch advised him that Gilbert's father had called and stated that Gilbert's wife had picked him up and they were headed to their home on Jessie Byrd Road. Oster finally made contact with Gilbert around 9:18 p.m. that night and put him in custody. Oster asked Gilbert for a blood sample, but Gilbert refused, telling Oster the only things that would show up would be THC and alcohol.

¶7.     After Gilbert refused to provide a blood sample, Rogers contacted Carter. Carter testified that he had already been advised about the accident and that one of the drivers had fled the scene. Oster informed Carter that Gilbert had refused the Intoxilyzer 8000 and had also refused to consent to a blood test. As a result, Carter obtained a search warrant to draw Gilbert's blood. A deputy transported Gilbert to South Central Regional Medical Center where Gilbert's blood was drawn. Carter took two vials of Gilbert's blood to the sheriff's department where it was logged as evidence. The blood was drawn at 11:45 p.m. on the night of the accident and was taken to the Mississippi Crime Laboratory on January 10, 2020, for a blood-alcohol analysis. David Lockley, the toxicology section chief with the Mississippi

Forensics Laboratory, testified that on February 5, 2020, he performed an analysis of Gilbert's blood and found it to contain an ethyl alcohol concentration of 0.104 percent.

¶8. Carter, along with the district attorney's investigator Brad Gruning, conducted a video interview with Gilbert on January 6, 2020, at the Jones County jail. Prior to the interview, Gilbert signed a waiver of his *Miranda*[2] rights. During the interview, Gilbert told Carter he had been drinking and should not have been driving. He told Carter that he ran into the woods after the collision because he was afraid of getting a DUI. Gilbert began to cry when he learned that Harper's baby had died. When asked to "walk them through" the day of the accident, Gilbert told them he had gone to his father's house where he consumed three beers. After that, he went to "Blue's" and bought two twenty-four-ounce beers, which he consumed. Gilbert admitted that he had also "smoked weed" just before the accident.

¶9. Gilbert told Carter that he was not speeding down Welch Road and did not remember exactly how the accident happened; he just remembered a "boom." Gilbert stated that he only had one headlight on his truck and admitted that he probably swerved into the wrong side of the road. After the collision, Gilbert said that he lay down in the woods and "hid like a coward." Later, he ran to his father's house where his wife picked him up and took him home. According to Gilbert, he did not consume any more alcohol or marijuana after the accident.[3] The recording of Gilbert's interview was admitted into evidence at trial.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] At trial, in contrast to Gilbert's interview, Gilbert's father testified that when Gilbert arrived at his home after the accident, he consumed three twelve-ounce beers over a twenty to twenty-five minute period.

## STANDARD OF REVIEW

¶10. Concerning appellate review of claims of ineffective assistance of counsel at trial, the Mississippi Supreme Court explained in *Cork v. State*, 329 So. 3d 1183, 1191-92 (¶¶31-33) (Miss. 2021):

> "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Dartez v. State*, 177 So. 3d 420, 422-23 (¶18) (Miss. 2015) (citing *Archer v. State*, 986 So. 2d 951 (Miss. 2008)). The Court addresses ineffective assistance of counsel claims on direct appeal only when "[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016) (alterations in original) (internal quotation marks omitted) (quoting *Read v. State*, 430 So. 2d 832, [841] (Miss. 1983)). Because the record here suffices, we address Cork's ineffective assistance claims on direct appeal.
>
> "[T]o prevail on an ineffective-assistance-of-counsel claim, a defendant must first prove that his counsel was deficient, which requires showing that 'counsel made errors so serious that he or she was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *Chamberlin v. State*, 55 So. 3d 1046, 1050 (¶4) (Miss. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Secondly, a defendant must prove that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (quoting *Strickland*, 466 U.S. at 687).
>
> The Court "strongly presume[s] that counsel's conduct falls within the wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy." *Id.* at (¶5) (internal quotation marks omitted) (quoting *Liddell v. State*, 7 So. 3d 217, 219 (¶6) (Miss. 2009)). Thus, "defense counsel is presumed competent," and "even where professional error is proven, this Court must determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.*

## ANALYSIS

6

## I. Ineffective Assistance of Counsel

¶11.    Gilbert identifies four instances where he alleges he was denied effective assistance of counsel at trial. As noted above, such claims are generally more appropriately brought through a post-conviction motion. However, in *Archer v. State*, 118 So. 3d 612, 627 (¶68) (Miss. Ct. App. 2012), this Court stated:

> Archer is represented by new counsel on appeal. Mississippi Rule of Appellate Procedure 22(b) provides:
>
> > Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record. Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.
>
> The comment to Rule 22(b) specifically states that "claims of ineffective assistance of counsel for failure to object to evidence offered by the state or to argument by the state must be raised on direct appeal." *Id*.

In the present case, Gilbert has new counsel on appeal who argues that the record is sufficient to decide the issue of ineffective assistance of counsel on direct appeal. After reviewing Gilbert's claims, we find that the relevant facts and issues are apparent from the record, and the record affirmatively shows that Gilbert's claims are without merit.[4] Accordingly, we will address Gilbert's claims.

### A.    Failure to Challenge the Voluntariness of the Confession

¶12.    Gilbert's new counsel argues that because no one witnessed the accident or who was

---

[4] *See Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020); *Ellis v. State*, 281 So. 3d 1092, 1099 (¶20) (Miss. Ct. App. 2019).

actually driving the truck, "it would seem elementary that Gilbert's confession should have been thoroughly scrutinized for its voluntariness and admissibility." He argues that the admission of an involuntary confession into evidence is barred by the Fifth Amendment to the United States Constitution. Gilbert's interview by law enforcement was videotaped and introduced as evidence at trial. Although it is part of the record on appeal, appellate counsel points to nothing in the video to support his claim that Gilbert's statement was "not voluntarily, made freely without threat or promise." Counsel simply concludes that "no inquiry into this foundational piece of evidence was done."

¶13.    Gilbert has made no meaningful argument that his recorded interview was involuntarily given. In *Bridges v. State*, 349 So. 3d 181, 186 (¶14) (Miss. Ct. App. 2022), this Court explained:

> "[T]he mere assertion of a constitutional right violation does not trigger the exception." *Creel* [*v. State*], 305 So. 3d [417,] 421 (¶9) [(Miss. Ct. App. 2020)]. The appellant "has a duty to make more than mere assertions and should set forth reasons for his arguments and cite authorities in their support." *Brown v. State*, 211 So. 3d 709, 712 (¶8) (Miss. Ct. App. 2016) (internal quotation marks omitted) (footnote omitted). **The claims on appeal "must be supported and proved by the record" and "cannot be decided based on assertions from the briefs alone**." *Patton v. State*, 109 So. 3d 66, 75 (¶22) (Miss. 2012). "If the party does not provide this support, this Court is under no duty to consider assignments of error . . . ." *White v. State*, 818 So. 2d 369, 371 (¶7) (Miss. Ct. App. 2002) (footnote omitted). We further explained that "assignments of error are procedurally barred from review" when the appellant has "failed to make meaningful arguments or cite pertinent authority in addressing [his] issues." *Id*.

(Emphasis added).

¶14.    In any event, our review of the recorded interview shows that after being advised of his *Miranda* rights, Gilbert agreed to give a statement. Without any evidence of intimidation

8

or coercion, Gilbert outlined his actions on the night of the accident. He admitted that he was driving under the influence and most likely crossed the center line. Gilbert was quite remorseful upon learning that Harper's baby did not survive. There is nothing apparent from the video, and Gilbert has pointed to nothing to indicate that he did not knowingly, intelligently, and voluntarily waive his Fifth Amendment rights and give the recorded statement. Trial counsel cannot be found to be constitutionally ineffective for failing to make futile objections to the admissibility of evidence. *See Carruthers v. State*, 348 So. 3d 1042, 1050 (¶19) (Miss. Ct. App. 2022).

¶15. Further, the record does indicate that trial counsel challenged the admissibility of parts of the recorded statement. Trial counsel filed a pretrial motion to exclude any reference in the interview to a baby shower that Harper had attended. That portion of the motion was granted, and a comment was edited out of the recorded statement. The motion also sought to exclude Gilbert's admission to having smoked marijuana just prior to the accident. The trial court denied that portion of trial counsel's motion. For appellate counsel to argue that "no inquiry into this foundational piece of evidence was done" is simply not supported by the record. For the reasons set forth above, this portion of Gilbert's claim of ineffective assistance of counsel is without merit.

### B.  Counsel's Admission of Guilt during Closing Arguments

¶16. Gilbert contends that his trial counsel was ineffective because he made the following statement during closing arguments:

> Ladies and gentlemen of the jury, there's actually some things we agree on here and surprise, surprise. There's some things we don't agree on here. I'm

9

going to take one of them off the table right now that we do agree on. We're not disputing that Cory left the scene of this collision. Give them that. I mean, he did. So we're not playing games.

¶17. Gilbert argues that his admitting he left the scene of the accident conceded an essential element of the charges against him. Gilbert reasons that without his confession and other inadmissible hearsay, the State had no proof he was driving the truck. In his brief, he claims, "[i]t would seem to be an obvious fundamental that if the State could not prove [Gilbert] was driving, then it could not prove he left the scene."

¶18. When counsel made the statement at issue during closing arguments, the jury had watched Gilbert's video statement he gave to law enforcement. In that statement, Gilbert clearly admitted that he was driving the truck at the time of the accident and that he immediately left the scene of the accident. As noted above, trial counsel was well aware of the content of Gilbert's recorded statement prior to trial.

¶19. In *Williams v. State*, 791 So. 2d 895, 899 (¶13) (Miss. Ct. App. 2001), the defendant was charged with aggravated assault, which had a maximum punishment of twenty years, and kidnapping, which had a maximum punishment of thirty years. There was a videotape of the shooting. *Id.* at 897 (¶3). Defense counsel conceded guilt as to the aggravated assault in an effort to gain favor for his argument that the defendant took the victim away from the scene to take her to the hospital for medical treatment and was not kidnapping her. *Id.* at 899 (¶14). In finding that counsel was not ineffective, this Court reasoned:

> In *United States v. Gomes*, a case decided by the United States Court of Appeals for the First Circuit, Gomes was tried on a number of counts relating to drug trafficking. *United States v. Gomes*, 177 F.3d 76, 78 (1st Cir. 1999). In closing argument, Gomes's counsel unequivocally admitted his client's guilt to one of the counts in an attempt (which was ultimately unsuccessful) to

10

contrast the evidence on that count with the prosecution's evidence on the other charges. *Id*. at 83. Gomes claimed this confession of guilt amounted to ineffective assistance of counsel. *Id*. Noting that the evidence on that count was overwhelming, the First Circuit called defense counsel's strategy a "calculated gamble" but nevertheless "patently a reasonable strategy" to seek to avoid conviction on the remaining counts and refused to find the attorney's performance ineffective. *Id*. That is substantially the same situation that is now before this Court and we can discover no reasoned basis to reach a result different from that of the First Circuit.

For the foregoing reasons, we decline to find defense counsel's statements to the jury, acknowledging the existence of evidence that was essentially beyond dispute and for which the defense could offer no exculpatory explanation, to be such ineffective assistance of counsel as to require us to set aside this conviction.

*Id*. at 900 (¶¶15-16).

¶20. Without good cause to challenge the admissibility of Gilbert's confession, trial counsel obviously turned his focus to the defense of Counts II and III. Before trial, trial counsel filed a "Defendant's Notice of Defense and Motion to Approve Jury Instruction," which shows that he intended to defend against the charges of aggravated DUI and DUI-related death of an unborn child by showing that the injuries and death were caused by Harper's failing to wear her seatbelt. After the court's ruling denying the motion, trial counsel defended those counts on other grounds at trial.

¶21. Faced with Gilbert's recorded confession as to Count I and the denial of his seatbelt defense, counsel's defense of Gilbert at trial focused on the State's failure to prove all the elements of Counts II and III beyond a reasonable doubt. He argued that the State had failed to prove beyond a reasonable doubt that Gilbert's blood-alcohol concentration was 0.08 percent or above at the time of the accident. The evidence showed that his blood was drawn hours after the accident, and some evidence showed that he consumed alcohol after the

11

accident. Counsel also argued that the State had not proved beyond a reasonable doubt that the accident was caused by Gilbert's negligent driving. Counsel told the jury that the State's own expert could not say beyond a reasonable doubt in which lane of travel the collision occurred. Finally, as to Count III, he argued that because there was no autopsy performed on the fetus, the State did not prove beyond a reasonable doubt that the death was caused by the accident. Trial counsel was even more direct toward the end of his closing argument when he said, "[F]ind him guilty on Count 1. He left the scene. But there's reasonable doubt on Counts II and III."

¶22.    Gilbert's appellate counsel admits in his brief that conceding guilt is sometimes a trial tactic but argues that it is sometimes a bad tactic. Appellate counsel recognizes the difficulty in showing prejudice under the *Strickland* test outlined above in the face of Gilbert's video-recorded confession. In *Faraga v. State*, 514 So. 2d 295, 306 (Miss. 1987), the supreme court found:

> Under the standard set forth in *Strickland*, a defendant claiming ineffective assistance of counsel must overcome a strong presumption that his attorney's actions might be considered sound trial strategy. For purposes of the instant case, we should keep in mind that a case of clear guilt supported by confessions and direct evidence is less likely to support a claim of ineffectiveness, since the second (prejudice) prong of the *Strickland* test will be difficult to meet. *Messer v. Kemp*, 760 F.2d 1080, 1092 (11th Cir. 1985); [*Strickland*,] 466 U.S. at 688-91.

¶23.    As it relates to this claim, we find that Gilbert failed to satisfy either prong of the *Strickland* test, providing no evidence that counsel's admission under the facts of this case

was either deficient or prejudicial.[5]

### C. Failure to Object to Hearsay

¶24. Gilbert contends that his trial counsel's failure to object to Rogers' testimony that Autumn told him Gilbert "was in possession of the vehicle at the time" was ineffective assistance of counsel. Gilbert alleges Rogers' testimony was hearsay. We disagree. In *Stevens v. State*, 312 So. 3d 1205, 1209 (¶9) (Miss. Ct. App. 2021), we explained:

> An out-of-court statement is hearsay if it is offered "to prove the truth of the matter asserted." M.R.E. 801(c). Thus, to determine whether a statement is hearsay we must first determine the purpose for which it was offered and admitted. *Smith v. State*, 258 So. 3d 292, 309 (¶50) (Miss. Ct. App. 2018). Our Supreme Court and this Court have held repeatedly that out-of-court "[s]tatements do not constitute hearsay when admitted" not to prove the truth of the matter asserted but rather "to explain an officer's course of investigation or motivation for the next investigatory step by that officer." *Eubanks v. State*, 291 So. 3d 309, 322-23 (¶51) (Miss. 2020) (emphasis added) (quoting *Smith*, 258 So. 3d at 309 (¶52) (quoting *Fullilove v. State*, 101 So. 3d 669, 675 (¶20) (Miss. Ct. App. 2012))).

¶25. Rogers' testimony was an explanation of the course of his investigation. He ran the tag number on the truck and found that it was registered to James Cory Gilbert and Autumn Gilbert. During the course of his inventory of the vehicle, he found a cell phone in the truck.[6] Rogers was then able to contact Autumn, who told him Gilbert had the truck. At that point,

---

[5] We "look at the totality of the circumstances to determine whether counsel's efforts were both deficient and prejudicial. There is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Ford v. State*, 333 So. 3d 896, 913 (¶42) (Miss. Ct. App. 2022) (internal quotation marks omitted) (quoting *Henderson v. State*, 281 So. 3d 1058, 1063 (¶16) (Miss. Ct. App. 2019)); *accord Brock v. State*, 348 So. 3d 1007, 1010 (¶7) (Miss. Ct. App. 2022).

[6] Later, in his recorded statement, Gilbert stated that he was reaching for his cell phone before the accident occurred. There is a reasonable inference that the phone Rogers found in the truck belonged to Gilbert.

13

law enforcement began to search for Gilbert. The statement was not offered to prove that Gilbert was driving the truck at the time of the accident, mainly because that is not what Autumn said. Instead, it was offered to show the information upon which law enforcement acted, i.e., why they began to search for Gilbert. Gilbert has not shown that his trial counsel's performance in this instance was deficient or that his trial counsel's failure to object in this instance deprived him of a fair trial. *See Carruthers*, 348 So. 3d at 1049 (¶13).

### D. Failure to Challenge the Custodial Statement Made by Gilbert without Advisement of his *Miranda* Rights

¶26. Gilbert appears to argue that his trial counsel was ineffective by failing to challenge the admissibility of Oster's testimony that after refusing to give a blood sample, Gilbert told Oster all he would find was THC and alcohol. The State argues that the statement Gilbert made was not a direct response to the request for blood and was not a "custodial interrogation." According to Oster's testimony, his exchange with Gilbert went as follows:

Q. And when you took him into custody, did you ask him a question - -

A. I did.

Q. - - at all?

A. I did. I asked him if he would consent to a blood draw.

Q. And what did he say to that?

A. He asked, For what? And I told him it would be for any substance in his system. And he said the only thing that would show up would be THC and alcohol.

¶27. In *Brown v. State*, 336 So. 3d 134, 141-42 (¶20) (Miss. Ct. App. 2020), a case where the defendant was asked to consent to a gunshot residue test (GSR), we explained:

14

Brown first confessed after Farrish asked him for consent to a GSR test. In *Hubbert v. State*, 759 So. 2d 504 (Miss. Ct. App. 2000), this Court reasoned that an officer's request that the defendant submit to a GSR test was not an "interrogation." *Id*. at 508 (¶¶14-15) (quoting *Commonwealth v. Monahan*, 378 Pa. Super. 623, 549 A.2d 231, 236 (1988)). In addition, in *Smith v. State*, 942 So. 2d 308 (Miss. Ct. App. 2006), **we held that an officer's "request for and taking of a blood sample cannot be considered custodial interrogation under the law**." *Id*. at 320 (¶33). **Similarly, Farrish only asked Brown for consent to a GSR test. We cannot say that Farrish should have anticipated that his simple request for physical evidence was "reasonably likely to elicit an incriminating response from [Brown]**." [*Rhode Island v.*] *Innis*, 446 U.S. [291,] 301, 100 S. Ct. 1682 [(1980)] (footnote omitted). Therefore, Farrish did not "interrogate" Brown or violate his right to counsel, and Brown's confession to Farrish was properly admitted at trial.

(Emphasis added).

¶28. We find that Oster's question as to whether Gilbert would consent to a blood draw was not a custodial interrogation. Oster could not have anticipated that Gilbert would respond as he did. Trial counsel's failure to challenge the admissibility of this statement by Gilbert does not amount to deficient performance.[7] *See Carruthers*, 348 So. 3d at 1050 (¶16).

## II.    Prosecutor's Comment on Gilbert's Failure to Testify

¶29. Gilbert contends that during closing arguments, the State pitted "the testimony of the victim against the silence of the defendant." Gilbert argues that "[w]hile the State uses instances of Gilbert's behaviors, it has flatly contrasted them to the trial testimony of Mashayla Harper. The fact that Cory Gilbert did not testify is unavoidable in this comparison." Because trial counsel did not object to the comment, Gilbert suggests that this

---

[7] As part of his contention that his trial counsel was constitutionally ineffective, Gilbert briefly mentions under this assignment of error that his trial counsel also failed to object to the State's comment on his exercise of his Fifth Amendment right not to testify. We will address this issue below.

Court should consider the trial court's failure to address the comments as a matter of plain error. Alternatively, Gilbert argues that we should consider trial counsel's failure to object as another instance of ineffective assistance of counsel.

¶30. Concerning the consideration of improper comments by the prosecution during closing arguments as a matter of plain error, the supreme court stated in *Spiers v. State*, 361 So. 3d 643, 662-63 (¶¶70-71) (Miss. 2023):

> This Court has held the plain error doctrine will be applied to closing arguments when the "substance of the statement is 'out of bounds for closing arguments.'" *Boyd v. State*, 977 So. 2d 329, 337 [(¶34)] (Miss. 2008) (quoting *Minor v. State*, 831 So. 2d 1116, 112[3] [(¶23)] (Miss. 2002)). To determine whether the statement was out of bounds, we must find that "the prosecutor's statement was so inflammatory that the trial judge should have objected on his own motion." *Ambrose* [*v. State*], 254 So. 3d [77,] 130 [(¶165)] [(Miss. 2018)] (internal quotation mark omitted) (quoting *O'Connor* [*v. State*], 120 So. 3d [390,] 399 [(¶23)] [(Miss. 2013)].
>
> "Attorneys are to be given wide latitude in making their closing arguments." *Evans v. State*, 226 So. 3d 1, 31 (¶78) (Miss. 2017) (internal quotation marks omitted) (quoting *Jimpson v. State*, 532 So. 2d 985, 991 (Miss. 1988)). But "prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Sheppard v. State*, 777 So. 2d 659, 661 [(¶7)] (Miss. 2000) (citing *Hiter v. State*, 660 So. 2d 961, 966 (Miss. 1995)). As this Court held in *Brewer v. State*:
>
>> [s]o long as counsel in his address to the jury keeps fairly within the evidence and the issues involved, wide latitude of discussion is allowed; but when he departs entirely from the evidence in his argument[s] or makes statements intended solely to excite the passions or prejudices of the jury, or makes inflammatory and damaging statements of fact not found in the evidence, the trial judge should intervene to prevent unfair argument.
>
> *Brewer v. State*, 704 So. 2d 70, 72 (Miss. 1997) (alteration in original) (quoting *Clemons v. State*, 320 So. 2d 368, 371-72 (Miss. 1975)).

¶31. The statement Gilbert complains of was made by the prosecution near the beginning

16

of the rebuttal closing argument. In *Whitlock v. State*, 941 So. 2d 843, 846 (¶9) (Miss. Ct. App. 2006), we stressed that comments attorneys make must be taken in context. The portion of the argument that Gilbert contends is an improper comment on his right to remain silent is the first three sentences below:

> ***The difference between these two cases, Mashayla Harper was honest with you. She cannot remember the wreck. She can remember just before and she remembers feeling that baby move***. When she wakes up in the hospital, that's the first thing - - you know the first thing she does - - that's the first thing after the wreck for her. She asks how James Cory Gilbert is, doesn't she? That's what she said. And then she asks how her baby was. Do you know the first thing James Cory Gilbert did after the wreck? He fled. He didn't check on her, and he left her figuratively, literally, factually to die in a ditch in Jones County.

(Emphasis added).

¶32. The defense argued in closing that the State failed to prove beyond a reasonable doubt, relative to Counts II and III, that the accident was caused by Gilbert's negligence. The prosecution responded that Harper did not remember the wreck. The State went on to argue that it relied upon other evidence to show that the accident occurred when Gilbert veered into Harper's lane of travel.

¶33. The remainder of the comments cited above were directed to the proof required in Count I. As to Count I, it does not matter who caused the accident. Gilbert was involved in an accident and was charged with leaving the scene of the accident that caused serious injuries to Harper. The jury was instructed that under the circumstances of this case, Gilbert had a duty to remain on the scene and render reasonable assistance to the severely injured person, Harper. According to his own statement, Gilbert did not check on Harper after the accident. Instead, Gilbert ran away from the scene while Harper was in desperate need of

17

assistance. Those are essential elements of the charge.

¶34. We find that the complained of comments made by the prosecutor were not comments on Gilbert's right to remain silent or directed toward his failure to testify. Those comments were not "out of bounds" and did not

> "depart[ ] entirely from the evidence," were not "intended solely to excite the passions or prejudices of the jury," and were not "inflammatory or damaging statements of fact not found in the evidence." *Brewer*, 704 So. 2d at 72.

*Spiers*, 361 So. 3d at 663 (¶72).

¶35. The trial court did not commit plain error by sua sponte failing to address such comments at trial. Again, trial counsel cannot be found to be constitutionally ineffective for failing to make futile objections to the admissibility of evidence. *See Carruthers*, 348 So. 3d at 1050 (¶19).

## CONCLUSION

¶36. We find that the record affirmatively shows that Gilbert's claims of ineffective assistance of counsel are without merit and that the prosecution did not improperly draw attention to Gilbert's exercise of his right to remain silent during closing arguments.

¶37. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**